ARES–SERONO, INC., Serono Laboratories Inc., Applied Research Systems ARS Holding N.V., and Genzyme Corporation, Plaintiffs,

v.

ORGANON INTERNATIONAL B.V. and Organon, Inc., Defendants.

Civ. A. No. 92–11982–NMG.

United States District Court, D. Massachusetts.

Dec. 13, 1994.

Dale A. Malone, Dennis D. Allegretti, John P. Iwanicki, Allegretti & Witcoff, Boston, MA, Grantland G. Drutchas, Daniel A. Boehnen, Allegretti & Witcoff, Chicago, IL, for Serono Laboratories, Inc., Applied Research Systems, ARS Holding N.V., Genzyme Corp.

Alexander H. Pratt, Jr., Peabody & Arnold, Boston, MA, Berj A. Terzian, Isaac Jarkosvsky, Jennifer Gordon, Scott B. Familant, Pennie & Edmonds, New York City, for Organon Intern. B.V., Organon, Inc., Organon Teknika Corp.

*ARES–SERONO'S MOTION FOR AP-PROVAL OF SCOTT CHAPPEL, PH.D. AS A QUALIFIED EXPERT UNDER THE PROTECTIVE ORDER (DOCKET ENTRY # 165); ARES–SERONO'S RULE 37 MOTION TO COMPEL ORGANON TO PRODUCE ITS COMPLETE BBC FILES (DOCKET ENTRY # 170); DEFENDANTS' EMERGENCY MOTION FOR A PROTECTIVE ORDER UNDER F.R.CIV. P.RULE 26(C) (DOCKET ENTRY # 175)*

BOWLER, United States Magistrate Judge.

Plaintiffs Ares–Serono, Inc., Serono Laboratories, Inc., Applied Research Systems ARS Holding N.V., and Genzyme Corporation (collectively: "plaintiffs") filed a motion to approve Scott C. Chappel, Ph.D. ("Chappel"), as a qualified expert within the meaning of the protective order (Docket Entry # 96). (Docket Entry # 165). Defendants Organon International B.V. ("OIBV") and Organon, Inc. ("Organon") (collectively: "defendants") filed an opposition to the motion. (Docket Entry # 169). After conducting a hearing (Docket Entry # 173), this court took the motion (Docket Entry # 165) under advisement.

Plaintiffs also filed a motion to compel production of OIBV's original research materials on recombinant follicle stimulating hormone ("rFSH"). (Docket Entry # 170). Defendants filed an opposition (No Docket Entry No. Assigned) and an omnibus memorandum (No Docket Entry No. Assigned) and plaintiffs filed a reply to the opposition (No Docket Entry No. Assigned). After conducting a hearing (Docket Entry # 183), this court resolved a number of issues but reserved a ruling vis-a-vis the production of an OIBV patent application directed to rFSH. This opinion addresses this remaining issue.

Finally, defendants filed a motion for a protective order with regard to a number of depositions and a request to inspect OI's premises. (Docket Entry # 175). Plaintiffs oppose the motion (Docket Entry # 178) and defendants filed a proposal to resolve the issue (Docket Entry # 188). After conducting a hearing (Docket Entry # 183), this court resolved a number of issues but reserved a ruling with respect to the importation issue. This opinion addresses the importation issue.

## BACKGROUND

As noted in prior opinions, plaintiff Applied Research Systems ARS Holding N.V. is the licensee of U.S. Patent No. 4,923,805 ("the '805 patent"), issued by the United States Patent and Trademark Office on May 8, 1990. The '805 patent involves biologically active human fertility follicle stimulating hormone which includes alpha and beta subunits. (Docket Entry # 17, Ex. A). Count I of the second amended complaint (Docket Entry # 17) charges defendants with past infringement of the '805 patent by producing rFSH outside the United States comprising alpha and beta subunits and then importing the rFSH into the United States for commercial purposes in violation of 35 U.S.C. § 271(g).

Count II alleges that Organon's manufacture, use or sale of rFSH in the United States and/or its importation of rFSH into the United States infringes the '805 patent. Plaintiffs therefore seek a declaration that such acts constitute an infringement of the '805 patent. (Docket Entry # 17).

In Count IV,[1] plaintiffs seek a declaration that Organon's manufacture, use or sale of rFSH in the United States and/or its importation of rFSH into the United States infringes U.S. Patent No. 5,156,957 ("the '957 patent"). Entitled "Follicle Stimulating Hormone," the '957 patent claims an alternate method of producing rFSH using expression vectors separately encoding alpha and beta subunits. Count IV seeks declaratory relief with respect to the '957 patent. (Docket Entry # 17 & Ex. B).

The '805 patent claims a single expression vector to encode alpha and beta subunits of rFSH ("one vector process") and further claims a second process comprising one vector to encode the beta subunit of rFSH. The '957 patent uses separate expression vectors each encoding the alpha or beta sub-

1. By joint stipulation, the parties dismissed Count III. (Docket Entry # 69).

unit of rFSH ("two vector process") as well as a one vector process encoding both subunits. (Docket Entry # 17).

## I. ARES–SERONO'S MOTION FOR APPROVAL OF SCOTT CHAPPEL, PH.D AS A QUALIFIED EXPERT UNDER THE PROTECTIVE ORDER (DOCKET ENTRY # 165)

■ Plaintiffs request approval of Chappel as a qualified expert under paragraph five of the protective order. (Docket Entry # 165). Defendants contend that Chappel is a competitor of defendants and is not "independent" within the meaning of the protective order. (Docket Entry # 169).

Chappel is presently employed by Diacrin, Inc., a biotechnology company involved in transplantation in Charlestown, Massachusetts. From May 1985 to June 1989, Chappel worked at Integrated Genetics. Chappel worked at Ares–Serono, Inc. from June 1989 to February 1992. (Docket Entry # 166, Ex. B).

Chappel has researched and studied the area of gonadotropins at length including the pituitary gonadotropins LH and FSH. (Docket Entry # 169, Ex. A). He is the inventor of a patent, in addition to a number of other patents, which involves a method of stimulating follicle development and ovulation in a female through administering an FSH isoform and thereafter a second FSH isoform. (Docket Entry # 169, Ex. E). According to defendants, Chappel also authored the declaration upon which the patent examiner allowed the '805 patent. (Docket Entry # 169).

As a result of Chappel's expertise in an area directly competitive with defendants' business, defendants contend that Chappel will not be able to avoid inadvertently applying the confidential information he will acquire from defendants in the future. Furthermore, as the assignor of a number of patents, defendants maintain that Chappel has a continued association with plaintiffs.

The law pertaining to the approval of an expert is set forth in a prior Order (Docket Entry # 116) and need not be repeated. Chappel is not a present employee of Ares–Serono, Inc. Significantly, the protective order does not exclude former employees from qualifying as independent experts. While Chappel has a continued association with Ares–Serono as the assignor of a number of patents, defendants may explore this issue on cross examination. As a former employee, he neither participates in Ares–Serono, Inc.'s decision making process nor actively researches on behalf of Ares–Serono, Inc. He is willing to abide by the terms of the protective order. There is no indication to date that Chappel will become an advocate for Ares–Serono, Inc.

Chappel therefore qualifies as an independent expert under the terms of the protective order. Accordingly, the motion for approval (Docket Entry # 165) is **ALLOWED.**[2]

## II. ARES–SERONO'S RULE 37 MOTION TO COMPEL ORGANON TO PRODUCE ITS COMPLETE BBC FILES (DOCKET ENTRY # 170)

■ Plaintiffs move to compel production of OIBV's patent application filed in the Netherlands Patent Office on June 16, 1989. (Docket Entry # 170). Plaintiffs argue, in part, that the patent application is relevant and that defendants waived any privilege afforded to the application by allowing plaintiffs to inspect the application in April 1994. Plaintiffs viewed the application in the context of inspecting a large number of documents pertaining to OIBV's research into rFSH, referred to as the "BBC files."[3] (Docket Entry # 171; No Docket Entry No. Assigned, Plaintiffs' Reply Brief).

Plaintiffs represent and defendants do not argue otherwise that the Dutch patent application is directed towards rFSH. Plaintiffs surmise that the patent application likely contains admissions made by OIBV concerning the patentability of rFSH and related technology. Plaintiffs also state that they asked to copy the patent application during the inspection. (Docket Entry # 170).

2. This court expresses no view as to whether Chappel's opinion[s] will be admissible as evidence.

3. BBC is an acronym for OIBV's Biotechnology and Biochemistry Department.

**4**

Defendants point out that OIBV abandoned the patent application before it was examined, acted upon or published. They assert that foreign patent applications, such as the one at issue, ordinarily remain confidential and secret. (No. Docket Entry No. Assigned, Defendants' Opposition). Case law supports defendants' position. *See Wolowitz v. United States,* 185 U.S.P.Q. 155, 156 (Ct. Cl.1975) (patent applications "are secret documents and not available to the public generally").

While arguably relevant inasmuch as the application concerns rFSH, *see Caterpillar Tractor Co. v. Berco,* S.P.A., 714 F.2d 1110, 1116 (Fed.Cir.1983) (representations made to foreign patent office regarding same invention may constitute relevant evidence), whether to order production of the application is subject to a balancing test. Specifically, disclosure "of pending and abandoned applications should be ordered when the necessity for disclosure outweighs the desirability of maintaining the secrecy of data in the file wrapper, especially if protective measures can be fashioned to minimize intrusion." *Ideal Toy Corporation v. Tyco Industries, Inc.,* 478 F.Supp. 1191, 1193 (D.Del.1979).

A protective order exists in this case (Docket Entry # 96) such that defendants may designate the application as restricted confidential and thereby preclude inspection of the application by plaintiffs' in house counsel. More importantly, however, defendants waived the confidentiality afforded the patent application by allowing plaintiffs to inspect the document.

Defendants bear the burden of establishing a waiver even where, as here, they contend that the disclosure was inadvertent. *See Golden Valley Microwave Foods v. Weaver Popcorn,* 132 F.R.D. 204, 207 (N.D.Ind.1990). To support their position, defendants simply state that OIBV's attorneys were unaware that a copy of the patent application existed in the BBC files and, thus, the disclosure was inadvertent. In addition, they submit that the application is in the Dutch language. (No. Docket Entry No. Assigned, Defendants' Opposition, n. 5).

Defendants' two sentence explanation for the disclosure fails to meet their burden.

While this court does not question the existence of the privilege or its importance, defendants produced the patent application. In this district, disclosure of documents subject to an attorney client privilege operates as a waiver "to any documents disclosed by 'inadvertence.'" *International Digital Systems Corporation v. Digital Equipment Corporation,* 120 F.R.D. 445, 450 (D.Mass.1988); *accord Federal Deposit Insurance Corporation v. Singh,* 140 F.R.D. 252, 253 (D.Me.1992). The reasoning of *Digital* is persuasive and applies to the privilege at issue in the case at bar. Patent applications are accorded a high degree of secrecy in order to protect the invention. A strict rule applying a waiver to inadvertently disclosed documents serves to protect the secrecy of patent applications by ensuring that attorney's will more diligently install precautionary measures to avoid such disclosures. *See International Digital Systems Corporation v. Digital Equipment Corporation,* 120 F.R.D. at 450. As also noted in *Digital,* "'Mistake or inadvertence is, after all, merely a euphemism for negligence, and, certainly ... one is expected to pay a price for one's negligence.'" *International Digital Systems Corporation v. Digital Equipment Corporation,* 120 F.R.D. at 450 (quoting *In re Financial Management Corporation,* 77 B.R. 324 (D.Mass.1987)).

The motion to compel with respect to the production of the patent application (Docket Entry # 170) is therefore **ALLOWED.** Inasmuch as the parties stipulated that the protective order applies to all documents subject to discovery (Docket Entry # 96), production of the patent application is governed by the protective order.

### III. *DEFENDANTS' EMERGENCY MOTION FOR A PROTECTIVE ORDER UNDER F.R.CIV.P.RULE 26(c) (DOCKET ENTRY # 175)*

In July 1994 plaintiffs noticed a number of depositions and a request to inspect OI's premises. Plaintiffs sought this additional discovery as a result of discrepancies in the deposition testimony of Barbara Kowal ("Kowal"), OI's Assistant Director of Regulatory Affairs and designated Rule 30(b)(6) witness. The subject mater of the discrepancy involves the extent of OI's past importa-

tion of rFSH into the United States. Defendants object to conducting the additional discovery and move for a protective order. (Docket Entry # 175).

According to defendants, in or around late 1992 OI anticipated filing an investigational new drug application ("IND") with the Food and Drug Administration ("FDA") for rFSH produced with mammalian host cells through a two vector process. The mature rFSH protein was designated ORG 33172. (Docket Entry # 176). Defendants also represent that OI canceled its IND plans to develop rFSH with a two vector process and switched its IND plans to developing rFSH with a one vector process, designated as ORG 32489. (Docket Entry # 176). In or around December 1993 defendants state that OI decided to forego filing an IND and instead to submit a New Drug Application ("NDA") to the FDA for ORG 32489.

On February 22, 1994, OI issued a purchase order to OIBV for 0.9 grams of ORG 32489. The purchase requisition document reads, in part, "0.9 grams FSH (ORG 32489) FOR EXPERIMENTAL AND LABORATORY USE ONLY (IND AND NDA PURPOSES) STUDIES NECESSARY FOR FDA REGISTRATION PURPOSES ONLY." (Docket Entry # 176, Ex. B). OI received the shipment on or about March 7, 1994. (Docket Entry # 176, Ex. E).

In or around July 7, 1994, plaintiffs deposed Kowal. (Docket Entry # 176 & Ex. E). During the deposition, a discrepancy arose when Kowal was asked to examine a document. The document is a memorandum from P. Loonen, an OIBV employee, to "Dr. P.W. Stern" and "Dr. W. Mens," OI employees detailing an undated shipment to OI of 103 flacons of rFSH ("Loonen memorandum"). (Docket Entry # 178, Ex. B). Without producing excerpts of Kowal's deposition, plaintiffs state that Kowal testified at the deposition that the document reflected that OI imported 19.665 grams of rFSH. (Docket Entry # 178).

On July 15, 1994, Kowal made a declaration explaining the discrepancy in her deposition testimony regarding OI's importation activities. (Docket Entry # 176, Ex. E). Therein, she explained that, after investigat-

ing the Loonen memorandum, she determined that it accompanied the February 22, 1994 shipment of 0.9 grams of rFSH from OIBV to OI. She avers that the resulting amount of active raw material rFSH, excluding the additive ingredients, was 0.9 grams. (Docket Entry # 176, Ex. E). Nine grams of rFSH yields approximately 9,000,000 international units or 120,000 individual doses, according to plaintiffs. (Docket Entry # 178).

As a result of the discrepancy, plaintiffs noticed the depositions of the addressees of the Loonen memorandum, Dr. P.W. Stern and Dr. W. Mens. Plaintiffs also issued a request to enter OI's premises to inspect all rFSH material imported into the United States by defendants and all related documents, including the original batch records regarding any such imported rFSH. (Docket Entry # 178, Ex. E & F).

Defendants strenuously object to this additional discovery as overburdensome and oppressive. They consistently stress that OI's importation activities fall within the safe harbor of 35 U.S.C. § 271(g) ("section 271") inasmuch as OI imported the rFSH for the limited purpose of conducting stability studies to include in its planned NDA submission to the FDA. (Docket Entry # 176).

As noted in this court's September 1993 Order, defendants are not endowed with the unilateral ability to decide the scope and the reach of section 271. Whether the imported material falls within the confines of section 271 can only be determined after plaintiffs examine the relevant facts and this court makes a determination based on such facts. Plaintiffs' factual inquiry includes conducting the depositions of Dr. P.W. Stern and Dr. W. Mens notwithstanding defendants' arguments that this discovery is overburdensome and oppressive.

Relevancy is defined broadly under Rule 26 at the discovery stage of litigation. In the context of section 271, there is "no absolute privilege for trade secrets and similar confidential information." *Exxon Chemical Patents, Inc. v. Lubrizol Corporation*, 131 F.R.D. 668, 671 (S.D.Tex.1990).

On balance, however, plaintiffs' request to enter OI's premises to inspect the flacons is unjustified given the likelihood that plaintiffs can obtain the information through the less intrusive means of conducting the above noted depositions. *See* Rule 26(b)(2)(i), Fed.R.Civ.P. Plaintiffs' request to inspect the original batch records for the shipments noted in the Loonen memorandum and the original records reflecting the manufacturing, processing and packaging of the materials described in the Loonen memorandum can also be accomplished through less burdensome means, i.e., a request for production of documents to the extent defendants have not already produced the requested material and to the extent plaintiffs do not obtain this information during the above noted depositions.

Accordingly, with respect to the importation issue, defendants' motion for a protective order (Docket Entry # 175) is **DENIED** as to the depositions of Dr. P.W. Stern and Dr. W. Mens and **ALLOWED** as to plaintiffs' request to inspect OI's premises. Plaintiffs have up to and including January 20, 1995, to conduct the depositions.

## CONCLUSION

In accordance with the foregoing discussion, plaintiffs' motion for the approval of Chappel (Docket Entry # 165) is **AL-LOWED.** Plaintiffs' motion to compel with respect to the production of the patent application (Docket Entry # 170) is **ALLOWED.** Defendants' motion for a protective order with respect to the importation issue (Docket Entry # 175) is **DENIED** as to the depositions of Dr. P.W. Stern and Dr. W. Mens and **ALLOWED** as to plaintiffs' request to inspect OI's premises. Plaintiffs have up to and including January 20, 1995, to conduct the depositions.