**FIDELITY AND DEPOSIT COMPANY OF MARYLAND**

v.

**A. Donald McCULLOCH, Jr., Reef C. Ivey, II, Edward F. Walsh, William R. Lewis, Joel D. Rosen, Richard Gyde, and John E. Sylvester.**

Civil Action No. 96–338.

United States District Court, E.D. Pennsylvania.

Sept. 10, 1996.

518

William J. Lehane, Michael K. Sullivan, Drinker Biddle & Reath, Philadelphia, PA, for Plaintiff.

Peter J. Hoffman, Amy L. Currier, McKissock & Hoffman, Philadelphia, PA, for A. Donald McCulloch, Jr.

Barry E. Ungar, Carol J. Sulcoski, Mann, Ungar, Spector & Labovitz, P.C., Philadelphia, PA, for Reef C. Ivey, II.

Gilda L. Kramer, Philadelphia, PA, for Edward F. Walsh.

Abraham C. Reich, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for William R. Lewis.

Joel Rosen, Nutri/System, Inc., Horsham, PA, for Joel D. Rosen.

Peter E. Meltzer, Fellheimer, Eichen, Braverman & Kaskey, Philadelphia, PA, for Richard Gyde.

Thomas P. Hogan, Jr., Morgan, Lewis & Bockius, L.L.P., Philadelphia, PA, for John E. Sylvester.

## MEMORANDUM

JOYNER, District Judge.

Today we address the complex and contentious discovery dispute that has arisen among certain parties to this action. Three motions are presented for decision: (1) the Motion to Compel of Defendants A. Donald McCulloch, Jr. ("McCulloch"), William R. Lewis ("Lewis"), and Reef C. Ivey, II ("Ivey") (hereinafter "Defendants' Motion"), (2) Ivey's Supplemental Motion to Compel (hereinafter "Ivey's Motion"), and (3) the Cross–Motion for a Protective Order of Plaintiff Fidelity and Deposit Company of Maryland ("Fidelity"). Defendants' Motion concerns the interrogatories and requests for document production of Defendant McCulloch, and Plaintiff's Cross–Motion involves documents produced in response. Ivey's Motion seeks to compel responses to his own discovery requests.

For the reasons that follow, we hold that Fidelity has waived the attorney-client and work product privileges with respect to some, but not all, of the documents it has disclosed, but deny the remainder of Defendants' Motion. In addition, we grant Plaintiff's Motion for a Protective Order as to the remaining privileged disclosures, and grant in part and deny in part Ivey's Motion. Lastly, we extend the discovery deadline in this case by an additional 30 days.

## BACKGROUND

Plaintiff Fidelity is a stock insurance company that issued to Nutri/System, Inc. ("Nutri/System") a Pension and Welfare Fund Fiduciary Responsibility Policy ("Policy") for successive annual periods from July 31, 1991 through July 31, 1993. Defendants McCulloch, Lewis, and Ivey are former officers and directors of Nutri/System.[1]

During 1993 and 1994, McCulloch, Lewis and Ivey were named as defendants in some or all of six related lawsuits, five filed in the Court of Common Pleas of Montgomery County, Pennsylvania, and one filed in this Court (hereinafter the "underlying actions"). Former Nutri/System employees brought the underlying actions to recover pension and medical benefits due pursuant to Nutri/System's Pension and Profit Sharing Plan (hereinafter the "PPSP"). Plaintiffs in the underlying actions allege that McCulloch, Lewis, Ivey, and others are liable for said benefits under the Pennsylvania Wage Payment and Collection Law, Pennsylvania common law, and the Federal Employee Retirement Income Security Act of 1974 ("ERISA").

Under the Policy at issue in this case, Fidelity provides Defendants coverage for

all sums which the Insured shall become legally obligated to pay as damages due to any claim made during the policy period against the Insured because of: (a) any Breach of Fiduciary Duty (as herein defined) by an Insured, or (b) any Breach of Fiduciary Duty by any other person for whom the Insured is legally responsible.

Defs.' Mot. to Compel at Ex. A. A "Breach of Fiduciary Duty" is defined under the Policy as

the violation of any of the responsibilities, obligations, or duties imposed upon Fiduciaries by the Employee Retirement Income Security Act of 1974 ... or the common law or statutory law of any jurisdiction governing any of the Plan(s); the term includes any other negligent act, er-

ror or omission of the Insured in the Administration of any of the Plan(s).

*Id.* The Plan also contains certain relevant exclusions that may release Fidelity from any obligation to Defendants.

Fidelity accepted the duty to defend the underlying actions subject to a reservation of rights as to the PPSP claims that are not "ERISA type breaches of fiduciary duty." *See* Defs.' Mot. to Compel at Ex. C. As the number of claims grew and legal fees mounted,[2] Fidelity continued to provide for a defense subject to this reservation of rights, all the while advising Defendants that it had "not yet made a determination regarding coverage of the claims asserted in the various litigations." *Id.* During this period, Fidelity consistently maintained that, while it was "continuing [its] review of the coverage issue," it was "of the opinion that it may have no responsibility for the defense or indemnification of any claims for any losses attributed to any violations other than ERISA violations." *Id.*

On January 17, 1996, Fidelity instituted this declaratory judgment action to determine its rights and obligations to Defendants under the Policy. In response, Defendants McCulloch, Lewis, and Ivey asserted counterclaims alleging, *inter alia*, breach of contract, breach of fiduciary duty, and bad faith under the Pennsylvania Unfair Insurance Practices Act. Defendants contend generally that Fidelity's attempts to disclaim coverage are motivated solely by a desire to avoid paying escalating defense costs.

■ Inevitably, this document intensive litigation produced discovery disputes necessitating judicial intervention. The various motions and memoranda of law submitted by both sides raise numerous issues apparently mooted by subsequent document production. We address only those questions that the parties identified in the August 27, 1996 conference call as remaining in dispute and re-

---

1. Nutri/System, which filed for bankruptcy under Chapter 11 of the Bankruptcy Code in 1993, is not a party to this action. Defendants Edward F. Walsh, Joel D. Rosen, Richard Gyde, and John E. Sylvester have not joined the motions presently before the Court.

2. As the underlying litigation progressed, conflicts became apparent, and Fidelity eventually agreed to representation by seven separate counsel. Defendants estimate that, as of July 27, 1996, the cost of this litigation exceeded $800,000.

gard all other issues as having been resolved among the parties themselves. Throughout our analysis, we remain mindful that, under Federal Rule of Civil Procedure 26, Defendants "may obtain discovery regarding any matter, not privileged, which is relevant to subject matter involved in the pending action ... [so long as] the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R.Civ.P. 26(b)(1). We note also that Plaintiff, as the party resisting discovery, bears the burden of persuasion on its objections. *Bayges v. SEPTA,* 144 F.R.D. 269, 271 (E.D.Pa.1992); *Roesberg v. Johns–Manville Corp.,* 85 F.R.D. 292, 297 (E.D.Pa.1980).

## DISCUSSION

### I. THE MOTION TO COMPEL OF DEFENDANTS MCCULLOCH, LEWIS, AND IVEY

#### A. Waiver of the Attorney–Client and Work Product Privileges

Plaintiff objects to many of Defendants' interrogatories and requests for document production on the grounds that they call for privileged information. Defendants contend that Plaintiff waived any applicable privileges with respect to communications with counsel regarding the coverage decision, and allege two distinct bases on which we might find such a waiver. We find the first argument meritless, but agree that certain of Fidelity's disclosures constitute a limited waiver.

##### 1. Waiver by Placing the Advice of Counsel in Issue

Defendants contend first that Fidelity waived the protections of the attorney-client privilege by placing the advice of counsel at issue in this case. Defendants assert that Plaintiff "indirectly raised the issue of advice of counsel as part of its defense in both its Answer and the counterclaims against it" and "directly asserted such defense in answers and objections to discovery." Defs.' Mem. in Supp. of Mot. to Compel at 20. Defendants point obliquely to their attached Exhibit "H"

(which simply includes Plaintiff's Responses to Counterclaims and Answers to Discovery) to substantiate these allegations. They assert further that several documents (reprinted in their attached Exhibit "N") in which Fidelity employees refer to or mention attorney opinion letters "reveal that [Plaintiff] made its purported coverage decision and filed the instant action only after having sought the advice of counsel." Defs.' Mem. in Supp. of Mot. to Compel at 20–21.

■ In this Circuit, a party waives the attorney-client privilege by placing the advice of counsel in issue only where "the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication." *Rhone–Poulenc Rorer Inc. v. Home Indemnity Company,* 32 F.3d 851, 863 (3d Cir.1994); *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 486 (3d Cir.1995). Advice of counsel "is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Rhone–Poulenc,* 32 F.3d at 863. Rather, the client must take "the affirmative step in the litigation to place the advice of the attorney in issue." *Id.*

■ Defendants' contentions are plainly insufficient under this standard. Fidelity asserts no claim or defense in its Complaint or in any of its Responses to Defendants' Counterclaims that rests on the advice of counsel, nor does it attempt to prove any claim or defense by disclosing such advice.[3] Indeed, the documents Defendants point to establish only that Fidelity's "state of mind" (to the extent that a corporation can have one) was affected in a relevant manner by the advice of its outside counsel at Drinker, Biddle & Reath (hereinafter "Drinker"). As the Third Circuit stressed in *Rhone–Poulenc,* this simply does not amount to a waiver in this context.

While a slightly different standard may determine whether a party waives the work-product privilege by placing the advice of

---

3. As discussed *infra,* any disclosures of privileged information were inadvertent. Defendants' allegation that Plaintiff "indirectly" placed the ad-

vice in issue is so unpersuasive in light of the relevant standard as to border on the frivolous.

counsel at issue, it is equally clear that no such waiver occurred here. Judge Pollak recently followed the proposed Third Restatement of the Law Governing Lawyers suggested standard that "work product immunity is waived by use in litigation only when 'the client asserts' that ... 'the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the clients' conduct.'" *In re Painted Aluminum Products Antitrust Litigation,* 1996 WL 397472, *4 (E.D.Pa.1996). Like the *Rhone–Poulenc* standard discussed *supra,* this rule requires an affirmative step by Fidelity that has not occurred here.

### 2. Waiver by Disclosure [4]

■ Defendants argue alternatively that Plaintiff waived the attorney-client privilege as to its communications with Drinker by disclosing several such communications in the course of discovery. While Defendants allege that Plaintiff initially produced twenty privileged documents, we agree with Plaintiff that only five of these documents (hereinafter "the first disclosures") actually fall within the privilege.[5] Fidelity argues further that the disclosures were inadvertent, and that this Court should issue a protective order requiring Defendants to return the documents. In their Response to Plaintiff's Opposition to the Motion to Compel and Cross–Motion for Protective Order (and in a subsequent letter

to this Court),[6] Defendants argue that Plaintiff's subsequent disclosures of additional privileged documents (hereinafter "the second disclosures") bolster their waiver argument. While Plaintiff has not responded specifically to this contention, we assume its response to the Motion applies equally to allegations made in the Reply Brief. We separately address the waiver issue with respect to the first and second disclosures.

### a. The First Disclosures

■ Fidelity argues that its initial disclosures do not waive the attorney-client privilege because their production was inadvertent. Fidelity has met its burden of establishing that the disclosures were truly inadvertent and not voluntary or intentional, *see Edwards v. Whitaker,* 868 F.Supp. 226, 228 (M.D.Tenn.1994); *Ares–Serono, Inc. v. Organon International B.V.,* 160 F.R.D. 1, 4 (D.Mass.1994), but this does not end our inquiry into the matter. While waiver of the attorney-client privilege must generally be voluntary, *Redland Soccer Club v. Department of the Army,* 55 F.3d 827, 856 (3d Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 772, 133 L.Ed.2d 725 (1996), our Court will find in some circumstances that the privilege is lost as to particular documents that are inadvertently disclosed.[7] Consideration

---

**4.** The standards governing waiver of the attorney-client and work product privileges through inadvertent disclosure are essentially the same: *See* Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2016.2; *Westinghouse v. Republic of the Philippines,* 951 F.2d 1414, 1429 (3d Cir.1991) ("the standard for waiving the work-product doctrine should be no more stringent than the standard for waiving the attorney-client privilege"). One important difference, not relevant here, is that given the different scope and purpose of the privileges, courts must distinguish between disclosures to adversaries and non-adversaries in the work-product context. *Id.* at 1428. Here, the disclosures were clearly made to adversaries, and the question facing us is whether the circumstances of the disclosures constitute a waiver.

**5.** The traditional elements of the attorney-client privilege are:
(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this

communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived.
*Rhone–Poulenc,* 32 F.3d at 862. We agree with Plaintiff's contention that only documents 12, 13, 15, 18 and 20 of Defendants' Exhibit N qualify as privileged communications. *See* Pl.'s Mem. in Opp. to Mot. to Compel at 12–13 n. 4.

**6.** On September 3, 1996, this Court received by hand delivery a letter from Ivey's counsel with four additional documents produced by Plaintiff that contain privileged information.

**7.** Inadvertent disclosures of privileged communications do not waive the privilege as to the entire subject matter of those communications, as Defendants urge, but only in very limited circum-

of five factors determines whether an inadvertent disclosure constitutes a waiver:

> (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be served by relieving the party of its errors.

*Rotelli v. 7–Up Bottling Co.*, 1995 WL 234171, 1995 U.S. Dist. LEXIS 5277, *6 (E.D.Pa.1995); *Ciba–Geigy Corp. v. Sandoz, Ltd.*, 916 F.Supp. 404, 411 (D.N.J.1995); *Advanced Medical, Inc. v. Arden Medical Sys., Inc.*, 1988 WL 76128, *2 (E.D.Pa. July 18, 1988); *but see Berg Electronics v. Molex, Inc.*, 875 F.Supp. 261, 262–63 (D.Del.1995).

▪ We agree with Fidelity that these factors militate against finding a waiver as to first disclosures. Plaintiff's precautions against inadvertent disclosure were at least minimally adequate, though we can imagine additional precautions that might have been taken in this document-intensive litigation.[8] Further, not only was the number of disclosures small relative to the number of documents reviewed and produced, but the extent of the disclosure was minimal. The disclosures reveal, at most, the nature of some of services that Drinker was performing for

Fidelity, and disclose no significant facts concerning the substance of any legal opinion. Further, a tight discovery schedule created time pressures that also weigh against waiver. *See, e.g., Prebilt Corp. v. Preway, Inc.*, 1988 WL 99713, *2–3 (E.D.Pa. Sept. 23, 1988) (absence of time constraints on discovery favors waiver); *Advanced Medical, Inc. v. Arden Medical Sys., Inc.*, 1988 WL 76128, *2 (E.D.Pa. July 18, 1988) (same). While Plaintiff has not been especially vigilant in its efforts to rectify these disclosures, we find that the interests of justice are best served by holding that a small number of insignificant disclosures do not constitute a waiver. We further find that the attorney-client privilege provides sufficient "good cause" under Rule 26(c) to grant the protective order with respect to these initial disclosures.[9]

### b. The Second Disclosures

Defendants argue that the additional disclosures of privileged communications made in Plaintiff's supplemental document production, coupled with Plaintiff's first disclosures, constitute "a continuing production by counsel of documents germane to the discovery issues before this court." Defs.' Reply Br. at 12. While such a far-reaching allegation is unfounded, we do find that Fidelity has waived its privilege with respect to the second disclosures.

---

stances as to the particular documents disclosed. *See ICI Americas Inc. v. John Wanamaker of Philadelphia*, 1989 WL 38647 (E.D.Pa.1989) (interpreting Pennsylvania law); *International Digital Systems Corporation v. Digital Equipment Corporation*, 120 F.R.D. 445, 446 (D.Mass.1988); *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 116 F.R.D. 46, 52 (M.D.N.C.1987); *see also* Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2016.2 n. 26.

8. Plaintiff describes its procedures as follows:
 Fidelity and Deposit's counsel spent over seven hours reviewing these documents, which constituted two full boxes and over 5,000 pages, and tagged privileged and non-responsive documents. Counsel then directed a paralegal to remove the privileged and the nonresponsive documents and to create a privilege log. After the paralegal performed his responsibilities, the remaining documents were then made available to [McCulloch's counsel] for inspection and copying.

Pl.'s Mem. in Opp'n to the Mot. to Compel of Defs. at 14–15. Plaintiff's counsel might also, for example, have conducted a final review of the materials after the paralegal had finished but before they were made available to opposing counsel.

9. The squabbling concerning the document at Bates No. P–00071–80 reflects very poorly on the general tenor of the communications among counsel in this case. It appears that the situation presented nothing more than an honest misunderstanding as to the identity of this document (or documents), and might have been resolved quite painlessly by a simple phone call. We fault neither side entirely, but doubt very highly that Defendants would undertake to deceive this Court in the manner that Plaintiff suggests. We hope that the counsels' efforts to comply with the Order we issue today are made in good faith and with a spirit of cooperation that seems thus far to have been lacking.

 Our analysis is again governed by the multi-factor test described *supra*. This test balances the notions that, while the attorney-client privilege belongs to the client, the attorney, acting as the client's agent, may be sufficiently negligent in protecting the privilege that it may be waived as to particular documents disclosed. *See Ciba–Geigy Corporation v. Sandoz Ltd.*, 916 F.Supp. at 411. We find that Fidelity's attorneys' carelessness with respect to the second disclosures warrants the finding that a limited waiver has occurred. First, Fidelity has reviewed these documents at least twice, once before the first production and then again when it apparently modified its initial privilege determinations, and made them available. Second, though the disclosure is fairly limited in number (just six documents out of several thousand produced), at least two of the documents go to the heart of the privilege that Fidelity asserts in this case. The documents at Bates No. P–6430 to 6434 and P–00132 to 00133 describe in considerable detail the substance of outside counsel's legal opinion as to Plaintiff's liability under the Policy for the PPSP claims. Time pressures that had existed at the time of the first production were substantially eased by this Court's August 12, 1996 Order extending the discovery deadline by 45 days. Further, the Court is aware of no efforts (such as a supplemental motion for a protective order) on Plaintiff's part to rectify these disclosures. These documents clearly would not have been disclosed had Fidelity taken reasonable precautions, and in view of the substance of the disclosures, the interests of justice are served by finding that Fidelity has lost its privilege with respect to them. *See Edwards v. Whitaker*, 868 F.Supp. 226, 228 (M.D.Tenn. 1994); *FDIC v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479, 483 (E.D.Va. 1991).

### 3. The Sufficiency of the Privilege Log

While it appeared from the conference call that the sufficiency of Plaintiff's privilege log under Rule 26(b)(5) may no longer be disputed, we briefly address Defendants' claims in this regard.[10] We find that by compiling a privilege log and asserting the applicable privileges document by document, Plaintiff has generally complied with the requirements of this rule. *See U.S. v. Rockwell International*, 897 F.2d 1255, 1265 (3d Cir. 1990). We agree with Defendants that, in the few instances (four telephone messages and one handwritten note) where no author is listed, Plaintiff must describe the content of the documents such that they and this Court may better assess the applicability of the privilege.

### B. Drinker's Legal Bills

 Defendants seek to compel Fidelity to produce outside counsel's legal bills over its objection that such records are privileged attorney-client communications, work product, and irrelevant. Whether or not such bills qualify for work product protection, the billing records clearly are subject to the attorney-client privilege "to the extent that they reveal litigation strategy and/or the nature of services performed." *United States v. Keystone Sanitation Co.*, 885 F.Supp. 672, 675 (M.D.Pa.1994); *Leach v. Quality Health Services*, 162 F.R.D. 499, 501–02 (E.D.Pa.1995) (quoting same). The question remains whether Plaintiff must still produce the redacted billing records which, stripped of all privileged information, would consist merely of the date services were performed, the number of hours spent, the amount billed, and perhaps the names of the attorneys performing the services. *See Leach*, 162 F.R.D. at 501–02. We find that this request is not "reasonably calculated to lead to the discovery of admissible evidence" concerning either the coverage dispute or

---

**10.** Rule 26(b)(5) requires that a party claiming a privilege shall make the claim "expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5). The advi-

sory committee notes to the Rule suggest that "[d]etails concerning time, persons, general subject matter, etc. may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected." Fed.R.Civ.P. (26)(b)(5) advisory committee's notes.

any of the counterclaims, and deny this part of Defendants' motion.

Defendants do not explain, and we are hard pressed to imagine, the relevancy of such information or how its production would lead to the discovery of admissible evidence. As Plaintiff argues, Defendants' conclusory assertion that "billing information with outside counsel ... go[es] to the heart of [Defendants'] Counterclaim for bad faith and [is] necessary for the proper defense of this matter," *see* Defs.' Reply Br. at 5, is downright confounding. Such records simply shed no light on either the coverage dispute or the issue of bad faith. While even the non-privileged, bare essentials of attorney billing records are certainly discoverable in some cases, *see, e.g., id.; Kravco Co. v. Valley Forge Center Assoc.,* 1991 WL 274816 (E.D.Pa. Dec. 17, 1991), this is not one of them.

### C. Defendants' "Contention Interrogatories"

■■■ Defendants served Plaintiff with twelve interrogatories seeking information concerning its contentions at Paragraphs 26 through 30, 34, 36, 38, 40, 42, 44, and 45 of its Declaratory Judgment Complaint. Specifically, Defendants seek the following with respect to each contention:

(a) The Identity of each and every person with knowledge of any facts which support this contention, together with a summary of the facts known to each such person;

(b) The identity of all documents which support this contention;

(c) The exact title and description of each document in your claim investigation file which supports such contention; and

(d) The exact policy language upon which [Fidelity] relies in support of such contention.

Initially, Plaintiff objected to these interrogatories as calling for attorney work product, but it later amended each response by identifying (a) the Claims Attorney and three other persons who corresponded on this matter;

(b and c) the relevant complaints in the underlying actions and the Policy; and (d) the relevant Policy provision. Defendants contend that Fidelity should be compelled to produce additional documents over its objection because either (1) Fidelity has waived work product protection or (2) because Defendants have demonstrated substantial need of the materials and an inability to otherwise obtain them without undue hardship.[11] Having disposed of the waiver claim *supra,* we now address Defendants' allegation that the qualified work product privilege is lost in this case.

We find Defendants' contentions in this regard unpersuasive. Their argument amounts to the assertion that in "light of defendants' claim of bad faith against [Fidelity], it is clear that the entire claims file should be disclosed." They rely heavily on a 1983 decision of the Arizona Supreme Court that apparently holds that the work product doctrine should have no application to bad faith claims against insurers. *See Brown v. Superior Court,* 137 Ariz. 327, 670 P.2d 725, 734 (1983). They cite no authority, however, from either the Third Circuit or the Eastern District of Pennsylvania for this fairly remarkable proposition, and we see no reason to adopt it here. Carving such an exception in the protections embodied in Rule 26(b)(3) would be both unprecedented and unwarranted.

We find Plaintiff's amended responses to Defendants' Contention Interrogatories to be otherwise sufficient, though we fail to see why it did not respond with this information initially. If Defendants have lingering concerns that information is being wrongfully withheld on attorney-client or work product privilege grounds, they may always file an appropriate motion requesting an *in camera* review of particular documents.

## II. DEFENDANT IVEY'S SUPPLEMENTAL MOTION TO COMPEL

As noted *supra,* Defendant Ivey's Motion concerns its own discovery requests and raises several issues that we address in turn.

---

11. Defendants also alleged initially that Fidelity was withholding many documents on work product grounds that were beyond the scope of the work product protection. We take it from the August 27 conference call and from subsequent filings in connection with these motions that those disputes have been resolved.

## A. Reserve Information

■ Pennsylvania state law requires insurance companies to set aside reserves upon notice of potential losses under their policies. *See* 40 Pa.Cons.Stat. § 71 *et seq.* (1992). Requiring such reserves not only ensures that insurance companies are able to pay once liability is established or settlement is reached, but also enables the state insurance department to protect consumers by monitoring the financial condition of their insurers. *See North River Insurance Co. v. Greater New York Mutual Insurance Company,* 872 F.Supp. 1411, 1412 (E.D.Pa.1995).

Ivey's Document Request 12 seeks "all documents which reflect or relate to the setting of reserves for with [sic] respect to the claims asserted under the Policies or either of them." Ivey argues that information indicating that Fidelity set aside reserves will reveal its estimation of its liability for the PPSP claims and contradict its assertion that it bears no liability for these claims. Ivey further contends that documents indicating that Fidelity "raised its reserves for the PPSP-related claims as legal fees mounted" would substantiate his counterclaim that Fidelity sought to disclaim liability only after its financial obligation grew, and not as a result of any good faith determination of the Policy coverage. For the following reasons, however, we find that Fidelity's relevancy objections are well-taken and deny the Motion to Compel with respect to Document Request 12.

Our Court has been in general agreement that requests for production of reserve information are not "reasonably calculated to lead to the discovery of admissible evidence" concerning insurance policy interpretation. *See Rhone–Poulenc Rorer Inc. v. Home Indemnity Co.,* 1991 WL 237636, *4 (E.D.Pa.1991); *Bird v. Penn Central Co.,* 61 F.R.D. 43, 47 (E.D.Pa.1973) (noting the highly prejudicial potential of reserve information); *see also Union Carbide Corp. v. Travelers Indemnity Corp.,* 61 F.R.D. 411 (W.D.Pa.1973); *Champion International Corp. v. Liberty Mutual Insurance Co.,* 128 F.R.D. 608, 612 (S.D.N.Y. 1989). These cases stress the tenuous link between reserves and actual liability given that numerous considerations factor into complying with this statutory directive. In short, setting aside reserves does not amount to an admission of liability. *Cf. Champion International Corporation,* 128 F.R.D. at 612 (collecting cases from District Courts in the Second Circuit).

While the relevancy of the reserve data to the bad faith counterclaim presents a slightly closer question in terms of the case law, we find Plaintiff's objection convincing. We fail to see how compelling production of reserve information would bring Ivey any closer to proving bad faith on Fidelity's part. At most, such data would merely suggest what Ivey can already demonstrate and what Fidelity would surely concede, namely, that the cost of defending the PPSP claims increased over time. Ivey cites *North River Ins. Co. v. Greater New York Mutual Ins. Co.,* 872 F.Supp. 1411 (E.D.Pa.1995), as support for its contention, but this case is readily distinguishable. In *North River,* liability was undisputed, and the question was whether the defendant primary insurer's failure to settle the underlying claim within the policy limits before trial was in bad faith. The insurer's estimation of its own liability therefore had a direct bearing on the central issue in dispute. No such connection exists here.

## B. Other Litigation Concerning the Disputed Policy Language

■ Ivey's Interrogatory 1 asks Fidelity to identify "by caption, court and docket number all lawsuits brought by or against other [Fidelity] policyholders in which coverage under [a Fidelity] policy was disputed, and in which" the relevant Policy provisions were disputed. Ivey contends that this discovery (1) may reveal inconsistent positions taken by Fidelity which amount to admissions against interest, (2) is relevant to whether the disputed Policy language is ambiguous, and (3) may turn up cases in which terms such as "breach of fiduciary duty" were held to encompass claims such as the PPSP claims at issue here, a factor that would suggest bad faith on Fidelity's part. Fidelity objects to this discovery request as irrelevant and overbroad, and we agree.

Of Ivey's three contentions, we find the third especially unconvincing. A few min-

utes on Westlaw or Lexis should suffice to locate any judicial opinions construing the Policy provisions at issue here. As for the two remaining arguments, we find that they amount to nothing more than the "fishing expedition" that our Court has generally refused to compel. *See North River Insurance Company v. Greater New York Mutual Insurance Co.,* 872 F.Supp. 1411, 1412 (E.D.Pa. 1995); *Rhone–Poulenc–Rorer Inc. v. Home Indemnity Company,* 1991 WL 183842, \*3 (E.D.Pa.1991). Allowing discovery of other actions which concerned completely different facts and circumstances would "run counter to the important but often neglected Rule 1 of the Federal Rules of Civil Procedure which requires that all rules 'shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.'" *North River,* 872 F.Supp. at 1412. We find the authority Ivey cites to the contrary to be off-point.

### C. Other Interrogatories and Requests for Document Production

We assume that Fidelity has produced, as promised, the Home Office file, which allegedly contains 3,000 pages of relevant, responsive material, and the information requested in Ivey's Interrogatory 2. From Ivey's Reply Brief, it appears also that the dispute concerning Interrogatory 4 has been mooted by subsequent discovery. To the extent that it has not been, our disposition of the Motion to Compel with respect to Document Request 1 should resolve any lingering difficulties. We dispose of the remaining issues as follows.

#### 1. Interrogatory 7

This interrogatory asks Fidelity to identify "all persons who investigated Nutri/System's and/or any of the defendants' potential insurance claims against [Fidelity] under the Policies." Plaintiff objects to the term "investigated" as "ambiguous," but responds by identifying the Claims Attorney on the matter as well as three individuals who have "corresponded on this matter." Plaintiff alleges that it has identified the persons with knowledge of the PPSP claims, "each of whom played a part in the handling of this claim," but has "simply refused to character-

ize that any particular person's involvement was or was not investigation."

We find Fidelity's objection to be precisely the sort of dispute this Court should not be called on to resolve. As Ivey correctly notes, Fidelity surely must understand the meaning of the term "investigated" when the very Policy it issued reserves Fidelity "the right to make such investigation ... as it deems expedient." Further, Fidelity notes later that it has produced documents that include its "investigation materials" (Pl.'s Resp. in Opp. to Def. Ivey's Mot. to Compel at 7). We find Fidelity's objection to be disingenuous, and compel it to respond to Interrogatory 7 using the interpretation of "investigation" that it intends when it uses the term elsewhere.

#### 2. Document Requests 1 and 5 through 8

The dispute concerning these document requests also could have been resolved without judicial intervention. At issue in Document Request 1 is Ivey's request for production of "All documents (including but not limited to all claims files, all investigation files, and all underwriting files) relating to the policies." Plaintiff objects that, while the term "relate to" is overbroad and ambiguous,

> it has produced or is producing to defendants the claims file; the underwriting file; the sections of the 'claim' and underwriting manuals that discuss its fiduciary responsibility insurance policy; and the 'home office' file. These documents include [its] investigation materials.

Fidelity goes on to note that it has withheld "from these files" only billing records, reserve information, and documents that reflect or contain communications with outside counsel. Fidelity concludes that "frankly, [it] is not certain what additional documents in its possession, custody or control 'relate to' the policies."

While we agree with Fidelity that "relating to" is not sufficiently precise, we understand Ivey's concern that the "production of particular 'files' does not enable [him] to know" if Fidelity is still withholding relevant information that may not be contained in one of the enumerated files. In the interests of expediting this process, we grant the Motion to

Compel as to Document Request 1 to the extent that Fidelity must either produce (or identify on the privilege log, as appropriate) all documents in files other than the claims, home office, and underwriting files that are relevant to this litigation. If Fidelity's claims are to be believed, this part of today's Order should already be moot.

As for Document Requests 5 through 8, we agree with Defendants that Fidelity's answers that it "has already produced voluminous documents, including the claims file and underwriting file" are non-responsive and improper. Plaintiff has not met its burden of persuasion on its objections that such requests are vague, overbroad, and inadequate under Rule 34(b). We therefore grant Ivey's Motion with respect to these requests and order Plaintiff to produce the documents, to the extent that it has not already in the course of supplemental production, and respond to the requests as phrased.

### D. Request for Attorneys' Fees

 We deny Ivey's Rule 37 motion for attorneys' fees incurred in connection with this Motion.[12] Fidelity's response to Interrogatory 7, standing alone, might warrant awarding such expenses. We are satisfied, however, both that (1) the rest of Fidelity's objections were at least substantially justified, and (2) Ivey bears sufficient blame generally for failing to resolve these disputes without judicial intervention, that any imposition of attorneys' fees would be inappropriate. *See Caruso v. Coleman*, 157 F.R.D. 344, 350 (E.D.Pa.1994) (denying attorneys' fees where motion to compel was granted in part and denied in part and "mixed decision" left neither party a "'winner' or 'loser'").

### III. DEFENDANTS' MOTION REQUESTING AN EXTENSION OF THE DISCOVERY SCHEDULE

On August 12, 1996, this Court issued an Order extending the discovery deadline,

which had originally been set for August 15, 1996, by 45 days. In light of the concerns voiced by counsel during the August 27 conference call, we agree to extend the deadline by an additional 30 days, but we advise counsel that this will be the last such extension.

An appropriate Order follows.

### ORDER

AND NOW, this 10th day of September, 1996, upon consideration of (1) the Motion to Compel of Defendants McCulloch, Lewis, and Ivey, Plaintiff's Response and Cross–Motion for a Protective Order, and Defendants' Reply thereto, and (2) the Supplemental Motion to Compel of Defendant Ivey, Plaintiff's Response, and Defendant Ivey's Reply thereto, it is hereby ORDERED that

(1) Defendants' Motion to Compel is DENIED, except insofar as (a) Plaintiff is held to have waived the attorney-client and work-product privileges as to those documents described in the accompanying MEMORANDUM as the "second disclosures," and (b) Plaintiff must supplement the privilege log with respect to those documents for which no author is listed;

(2) Plaintiff's Motion for a Protective Order is GRANTED;

(3) Ivey's Supplemental Motion to Compel is GRANTED in PART and DENIED in PART. Ivey's Motion is GRANTED as to Interrogatory 7, Document Requests 5 through 8, and Document Request 1 in accordance with the accompanying MEMORANDUM. Ivey's Motion is DENIED in all other respects;

(4) Ivey's Request for Attorneys' Fees is DENIED; and

(5) the deadlines set forth in the Scheduling Order issued by this Court on May 15, 1996, and extended by 45 days by an August

---

**12.** *Federal Rule of Civil Procedure 37 provides that, upon granting a motion to compel,*

the court shall ... require the party ... whose conduct necessitated the motion ... to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees unless the court finds that the motion was filed without the movant's

first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response or objection was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(4).

12, 1996 Order of this Court, are extended by an additional 30 days.