## Herman Goldner Company Inc.
## v. Cimco Lewis Industries

C.P. of Philadelphia County, March Term 2001, no. 3501.

*James Hollyday,* for plaintiff.
*Alan Cotler, Andrew Hoppes* and *Peter Bludman,* for defendants.

HERRON, *J.,* July 19, 2002—Plaintiff Herman Goldner Company has filed a motion to compel the return of certain allegedly privileged documents. In the motion, Goldner seeks an order forcing defendant Cimco Lewis Industries t/a Cimco Refrigeration to return to Goldner certain allegedly privileged documents that were inadvertently disclosed in the discovery process. For the reasons set forth in this opinion, the court is granting the motion in substantial part.

## BACKGROUND

The underlying dispute in this case relates to an alleged breach of contract. In response to the defendants'

discovery requests, Goldner's counsel inadvertently provided several supposedly privileged and confidential documents. Defendant Klenzoid Inc. complied with Goldner's request to return the documents, but Cimco refused, arguing that the documents' production amounted to a waiver of privilege. In the motion, Goldner seeks an order compelling the return of the documents.[1]

## DISCUSSION

There are essentially two issues confronting the court: (1) whether Cimco has an obligation to return the documents; and (2) whether Cimco may use the information it acquired through its review of the documents in depositions. On both counts, the court agrees with Goldner and has granted the motion accordingly.

### I. *Cimco Has an Obligation To Return the Documents*

The first issue, which is presented explicitly in the motion, addresses what to do with the physical documents themselves.[2] In this regard, the law is clear: an

---

1. It is worth noting that, although Goldner's draft order directs that the documents may not be utilized for any purpose, the motion makes no mention of Cimco's right to employ the information revealed in the documents and does not address the potential evidentiary use of the documents. However, because Cimco has raised this issue in its response, the court will address it.

2. Goldner's request for the documents' return is separable from their future evidentiary use:

"If the document contains information that is beneficial to Lawyer B's client, Lawyer B's duty of zealous representation under DR 7-101 may require Lawyer B to seek court permission to use the information.

"Evidence questions of admissibility do not control the analysis of the ethical issues since privilege may sometimes be waived by disclo-

attorney receiving confidential documents has ethical obligations that may surpass the limitations implicated by the attorney-client privilege and that apply regardless of whether the documents in question retain their privileged status. American Bar Association Standing Committee on Ethics and Professional Responsibility formal opinion 92-368 specifically addressed the ethical responsibilities of attorneys who receive "materials that appear on their face to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear that the materials were not intended for the receiving lawyer":

"[I]t is the view of the committee that the receiving lawyer, as a matter of ethical conduct contemplated by the precepts underlying the model rules, (a) should not examine the materials once the inadvertence is discovered, (b) should notify the sending lawyer of their re-

---

sure. *Goldsborough v. Eagle Crest Partners Ltd.,* 314 Or. 336, 838 P.2d 1069 (1992) (waiver by disclosure in response to discovery request; no evidence of mistake, inadvertence or lack of client authorization); *GPL Treatment Ltd. v. Louisiana-Pacific Corp.,* 133 Or. App. 633, 638-39, 894 P.2d 470 (1995) (no error in trial court's exclusion of evidence on determination of no waiver by inadvertent disclosure, no awareness by sender of recipient's intent to offered as evidence until offer at trial), *aff'd on other grounds,* 323 Or. 116, 914 P.2d 682 (1996).

"On the limited facts presented in the second question, and under the Disciplinary Rules which apply in Oregon, Lawyer B must return the document. However, in order to adequately represent the client both zealously and with professionalism, Lawyer B may be well-advised to arrange with Lawyer A to seek a pretrial determination of the admissibility of the information disclosed." Oregon State Bar Association Board of Governors formal op. no. 1998-150 (Apr. 1998). To the extent that Goldner seeks an order barring the use of the documents, it must file an appropriate motion.

ceipt and (c) should abide by the sending lawyer's instructions as to their disposition." ABA form. op. 92-368 (Nov. 11, 1992). Cf. Florida State Bar Ass'n Comm. on Prof. Ethics op. no. 93-3 (Feb. 1, 1994) ("[A]n attorney, upon realizing or reasonably believing that he or she has received a document or documents that were inadvertently misdelivered, is ethically obligated to promptly notify the sender of the attorney's receipt of the documents. It is then up to the sender to take any further action."); Oregon State Bar Ass'n Bd. of Governors formal op. no. 1998-150 (Apr. 1998) ("If Lawyer B examines the document before Lawyer A informs Lawyer B of the inadvertent disclosure, Lawyer B is still ethically required to return the privileged document to Lawyer A. . . ."); Utah State Bar Eth. Adv. Op. Comm. op. no. 99-01 (Jan. 29, 1999) ("A lawyer is required to bring to the attention of opposing counsel the receipt of any such communication unless it is clear from the circumstances that the attorney-client privilege has been intentionally waived."). Thus, to the extent that Goldner inadvertently disclosed privileged documents, they must be returned.

This conclusion is bolstered by the specific facts of this case. It has been represented by counsel that the quick pace and cursory nature of Goldner's counsel's document review for privilege is attributable to satisfying the defendants' desire to have the certain documents available before an April 16 deposition. Tr. of hr'g, June 26, 2002 at 12-13. Goldner acted quickly once it became aware of the documents' disclosure; within two weeks of making the disclosures and within one day of becoming aware of them, Goldner's counsel contacted Cimco's

attorneys and requested the return of the documents. *Id.* at 14. Moreover, there is no evidence that returning the documents would prejudice Cimco in any way.[3]

Given the representations of counsel, it appears that the disclosure of the documents was unintentional. Consequently, the court concludes that Cimco is obligated to return all privileged documents [4] and that the motion must be granted in this regard.

## II. *Cimco May Not Make Use of the Information Contained in the Documents*

The second issue facing the court is what use, if any, Cimco may make of the information in the documents. The court finds that Cimco may not utilize the information in any of the confidential or privileged documents. Decisions addressing whether the disclosure of confidential documents constitutes a waiver of any related privilege amount to a minefield of nuanced, slightly differing opinions. In *Minatronics Corp. v. Buchanan Ingersoll P.C.*, 23 D.&C.4th 1 (1995), the Honorable E. Stanton Wettick considered several of these positions and initially placed each of them in one of three categories:

"The first line of cases holds that the production by counsel destroys the privilege. Under this case law, the privilege is lost as soon as counsel makes the privileged documents available to an opposing party; it does not

3. The fact that Klenzoid has complied with this requirement further undermines Cimco's position.

4. The court so far has refrained from undertaking an individual review of the documents to determine the confidential and privileged status of each. If the parties are unable to resolve the question of privilege with regard to specific documents, they are invited to submit the documents in question to the court for review.

matter whether the documents which counsel produced included documents that counsel did not intend to produce. . . .

"The second line of cases holds that the privilege is never lost through an inadvertent production of a privileged document. Under this line of cases, the protections of the attorney-client privilege are not waived through a truly inadvertent disclosure by counsel provided that counsel takes prompt action to rectify the situation upon discovery of the inadvertent disclosure. . . .

"The third line of cases to which the opinions refer holds that the production of a privileged document may but does not necessarily destroy the privilege, depending upon the relevant circumstances surrounding the production." 23 D.&C.4th at 5-6. See also, *Meridian Mtge. Corp. v. Spivak,* civ. a. no. 91-3932, 1992 WL 205640 (E.D. Pa. Aug. 14, 1992), at *3-*4 (reviewing three lines of cases addressing inadvertent disclosure of privileged information); Stacy L. Brustin, *Legal Services Provision Through Multidisciplinary Practice—Encouraging Holistic Advocacy While Protecting Ethical Interests,* 73 U. Colo. L. Rev. 787, 848 n.211 (2002) ("There are three tests that courts have used to decide whether attorney-client privilege is waived by the inadvertent production of a privileged document. These tests are: the 'strict test,' the 'middle test,' and the 'lenient test.' "). Judge Wettick went on to explain that these three categories can be collapsed into two:

"There really are not three separate approaches to the issue of whether the inadvertent disclosure waives the attorney-client privilege. The case law has developed two different approaches. *Under one approach, the privilege*

*is waived only if counsel intended to produce the privileged documents;* an inadvertent disclosure does not waive the privilege. The major variation within this approach deals with the extent to which the courts will scrutinize counsel's assertion that the disclosure was inadvertent. *Under the other approach, the privilege is lost when the document is disclosed.* The variations within this approach range from an absolute 'strict responsibility' approach to an approach which restores the privilege if counsel can show that documents were inadvertently produced despite the exercise of reasonable care." 23 D.&C.4th at 9-10. (emphasis added)

Judge Wettick found the first approach more favorable[5] and outlined a four-prong test for determining whether the privilege continued to apply:

"In summary, for the reasons set forth in this opinion, I am following the line of cases holding that the disclosure of documents protected by the attorney-client privilege does not waive the privilege where (1) the disclosure was inadvertent, (2) it is still possible to afford the party that produced the documents many of the protections provided by the attorney-client privilege, (3) counsel took reasonable steps after learning of the inadvertent production, and (4) the party receiving the documents will not be prejudiced by a court order prohibiting or restricting that party's use of the documents." *Id.* at 14.

---

5. The reasons for accepting a measured approach and rejecting the broad approach that privilege is always waived are presented quite cogently in *Minatronics. See* 23 D.&C.4th at 11-14. See also, *Blickle v. Bell-Thomson,* 31 Phila. 235, 250 (1996). ("[D]isclosure does not waive the privilege where, inter alia, counsel took reasonable steps after learning of inadvertent production of an allegedly privileged document.")

Other courts have not hesitated to offer their own suggestions on resolving this dilemma. One commonly used five-part test is as follows: "(1) the reasonableness of the precautions taken to prevent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; (5) whether the overriding interest of justice would or would not be served by relieving a party of its error." *McGreevy v. CSS Indus. Inc.*, no. civ. a. 95-CV-8063, 1996 WL 412813 at *2 (E.D. Pa. July 17, 1996). (citations omitted)

In *Hartford Fire Insurance Co. v. Garvey*, the court offered a slightly different test that focused on "(1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the 'overriding issue of fairness.' " 109 F.R.D. 323, 332 (N.D. Cal. 1985) (citing *Lois Sportswear U.S.A. Inc. v. Levi Strauss & Co.,* 104 F.R.D. 103, 105 (S.D.N.Y. 1985)).[6]

---

6. Commentators have also jumped into the fray. In *Waiver: A Comprehensive Analysis of a Consequence of Inadvertently Producing Documents Protected by the Attorney-Client Privilege,* 42 Cath. U. L. Rev. 465 (1993), for example, Roberta M. Harding proposes a test of her own:

"The following test should be applied by all courts as the means of resolving the waiver consequence issue: Once the parties are aware that privileged documents have been inadvertently produced, a rebuttable presumption is created whereby it is deemed that the producing party's inadvertent production has not waived the attorney-client privilege. This presumption is indicative of the alternative test's endorsement of attempting to secure the attorney-client privilege. Subsequently, the producing party should then request the return of the documents.

In summary, courts in situations similar to this one have considered the following factors:

(1) The reasonableness of the precautions taken to prevent disclosure;

(2) The inadvertence, extent and number of the disclosures;

---

Under this test, two key factors are initially presumed in the producing party's favor: (1) that the privileged documents were inadvertently produced; and (2) that the attorney-client privilege remains unscathed by the production of the documents. However, the producing party has the initial burden of proving that the documents are privileged. This burden is identical to that in the three currently existing tests.

"Once it is shown that the documents are protected by the attorney-client privilege, it is automatically presumed that the producing party did not waive the privilege and that the production was inadvertent. If the nonproducing party does not contest this scenario, then the nonproducing party must return the documents and is prohibited from using or relying upon them in any manner during the course of the litigation.

"However, if the nonproducing party contests the producing party's assessment of the situation, then the nonproducing party has the right to attempt to rebut the nonwaiver presumption. The nonproducing party might first opt to refute the producing party's contention that the documents are privileged. If this fails, the nonproducing party must then overcome the rebuttable presumption. Thus, the nonproducing party, in order to rebut the presumption and successfully establish that a waiver of the privilege has occurred, must prove two factors: (1) the privileged documents were not inadvertently produced; and (2) as a result, the attorney-client privilege is waived." 42 Cath. U. L. Rev. at 485-86. Cf. Gloria A. Kristopek, *To Peek or Not to Peek: Inadvertent or Unsolicited Disclosure of Documents to Opposing Counsel,* 33 Val. U. L. Rev. 643, 681 (1999) (proposing a model rule of professional conduct to address inadvertent disclosure of privileged material); Ken M. Zeidner, *Inadvertent Disclosure and the Attorney-Client Privilege: Looking to the Work-Product Doctrine for Guidance,* 22 Cardozo L. Rev. 1315 (2001) (proposing to treat inadvertently disclosed privileged documents as attorney work product).

(3) The steps taken after learning of the disclosure and the time frame in which those steps were taken;

(4) Issues of fairness and justice, including the utility of extending the attorney-client privilege and the prejudice the receiving party would suffer.

In addition to these considerations, most of which focus on the conduct of the disclosing party, the court is also aware of the ethical responsibilities of the attorney to whom the documents are disclosed, as discussed *supra.*

It appears that Goldner's counsel took some, though not overwhelming, precautions against the disclosure of confidential and privileged information. However, the court must view these minimal precautions in light of the circumstances under which they were instituted; it has been represented by counsel that the quick pace and cursory nature of Goldner's counsel's document review for privilege is attributable to the desire to satisfy the defendants' request and desire to have the certain documents available before an April 16 deposition. Tr. of hr'g, June 26, 2002 at 12-13.

The inadvertence, extent and number of the disclosures is also a wash. Given the representations of counsel, it cannot be said that the disclosure of the documents was intentional. On the other hand, the complete disclosure of 21 separate privileged documents supports Cimco's position.

---

It is unclear whether any of these proposed tests have been found persuasive, regardless of their efficacy. As an example, Harding's test has the advantage of addressing both the ethical concerns imposed on the receiving attorney and the decision as to the use of the disclosed documents. However, research has revealed no decision in which a court has adopted this test.

The remaining two factors militate in favor of Goldner. Goldner acted quickly once it became aware of the documents' disclosure; within two weeks of making the disclosures and within one day of becoming aware of them, Goldner's counsel contacted Cimco's attorneys and requested the return of the documents. Tr. 14. In addition, it is still possible to protect Goldner's interests by precluding Cimco's use and retention of the documents, and there is no evidence that returning the documents would prejudice Cimco in any way.

The court is also struck by the fact that Klenzoid's counsel has had no difficulty in complying with opinion 92-368. By halting its review of the documents upon recognizing their privileged status and returning the documents promptly, Klenzoid's counsel properly fulfilled its ethical obligations. Were the court to allow Cimco to use the information in the documents, it would effectively punish Klenzoid, which has no access to this information, for its proper and ethical conduct. This the court will not do.

Based on these factors, the court concludes that Cimco may not use information from the privileged documents. Accordingly, the motion is granted.[7]

## CONCLUSION

Cimco's counsel have an ethical obligation to return the privileged documents to Goldner. In addition, Cimco's counsel may not make use of information it discovered through the privileged documents.

---

7. Again, the court is hopeful that the parties will be able to come to an agreement as to which documents are, in fact, privileged, but will remain available to the parties in the event that a complete understanding between the parties is elusive.

### ORDER

And now, July 19, 2002, upon consideration of plaintiff Herman Goldner Company Inc.'s motion to compel the return of privileged documents and the response thereto of defendant Cimco Lewis Industries, and in accordance with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered and decreed that the motion is granted:

(1) The defendant shall return any and all copies of privileged documents within 10 days of the date of entry of this order.

(2) The defendant may not utilize any privileged documents for any purpose or appropriate sanctions shall be imposed upon the defendant following application to the court.

(3) If the parties are unable to resolve the question of privilege with regard to any specific document, they are invited to submit the document in question to the court for review.