**CARBIS WALKER, LLP, Appellee**

v.

**HILL, BARTH AND KING, LLC, Appellant.**

Superior Court of Pennsylvania.

Argued April 11, 2007.

Filed July 23, 2007.

Richard G. Witkowski, Cleveland, OH, for appellant.

Alan T. Silko, Pittsburgh, for appellee.

BEFORE: ORIE MELVIN, BOWES and TAMILIA, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, Hill, Barth and King, LLC (hereafter HBK), appeals from the trial court's June 21, 2006 order which granted a motion for protective order filed by Appellee, Carbis Walker, LLP (hereafter CW). HBK asserts that the document which the trial court ruled was discoverable by CW is protected by the attorney-client privilege. After careful review, we affirm.

¶ 2 The facts which are necessary to understand the issues on appeal are essentially not in dispute and may be summarized as follows. CW and HBK are competing accounting/consulting firms with offices in various locations including Meadville, Pennsylvania. CW is a Pennsylvania partnership while HBK is an Ohio corporation. Amended Complaint at ¶¶ 1, 2 (Certified Record (C.R.) at 31); Answer of HBK to Amended Complaint at ¶¶ 1, 2 (C.R. at 39). CW initiated this action in September 2005 against HBK and one of its employees, Donald Young (Young),[1] raising claims of breach of contract, interference with contractual relations, misappropriation of confidential information or trade secrets, and unfair competition. The complaint alleged that Young had been employed by CW between 1994 and 2004 pursuant to an Employment Agreement which contained, *inter alia*, a restrictive covenant and a liquidated damages provision for breach thereof. Amended Complaint at ¶¶ 11, 12, 14 (C.R. at 31). The complaint also asserted that Young left CW's employ in 2004 and was hired by HBK and that several CW clients transferred their accounts to HBK which accepted their business. *Id.* at ¶¶ 16–19. CW further alleged that Young used his knowledge of confidential information of CW including client identities and its "strategies, processes, and procedures." *Id.* at ¶ 22.

¶ 3 CW thereafter filed a motion for a protective order in which it alleged that on October 18, 2005, counsel for CW received a letter via facsimile transmission from the Cleveland, Ohio office of counsel for HBK. C.R. at 7, ¶ 11. The letter was addressed to a principal at HBK and was marked "Confidential: Attorney–Client Privilege." *Id.* at ¶ 11 and Exhibit 2. On October 20, 2005, counsel for CW informed counsel for HBK that he believed he had inadvertently received the letter and asked "how [he] should handle the correspondence" while also noting concerns with its contents. *Id.* at ¶¶ 12–13 and Exhibit 1.[2] On November 7, 2005, counsel for HBK requested that CW return the letter. *Id.* at ¶ 14 and Exhibit 2. The matter was presented to the trial court to determine whether the attorney-client privilege operated to prevent discovery of the letter. On June 21, 2006, after oral argument and the submission of briefs by the parties, the trial court granted CW's motion and ruled that the October 18, 2005 letter was discoverable.[3]

---

1. The Amended Complaint named two other defendants who are not parties to this appeal. Young has also not filed a brief on appeal.

2. We do observe that there has been no suggestion that counsel for CW failed to promptly notify HBK of the inadvertent disclosure. *See* Rule 4.4(b), Pa. R.P.C.; *see also* ABA Comm. on Ethics and Professional Responsibility Formal Opinions 06–440 (2006) and 05–437 (2005)(relating to obligations of lawyer receiving confidential materials through unsolicited receipt or inadvertent disclosure). There is also no dispute that counsel for CW subsequently returned the letter to HBK without disclosing its contents.

3. The trial court also "recuse[d] itself from further consideration and decision in this case." Order, 6/21/06, at ¶ 3 (C.R. at 26). By order of July 24, 2006, the trial court directed that the document be transmitted to this

This timely appeal followed, wherein HBK raises two issues for our review:

I. Whether the trial court erred by failing to apply Ohio law to a privileged communication transmitted by an Ohio attorney to his Ohio client, and the inadvertent disclosure occurred in Ohio.

II. Whether the trial court erred by holding that an inadvertently disclosed communication, that was returned by opposing counsel and was clearly marked "Confidential: Attorney-client Privil[e]ge[,]" was discoverable.

Appellant's brief at 4.[4]

■ ¶ 4 At the outset, we must determine whether this appeal is properly before us. "An appeal may be taken only from a final order unless otherwise permitted by statute or rule." *Ben v. Schwartz,* 556 Pa. 475, 481, 729 A.2d 547, 550 (1999). Collateral orders are one exception to this general rule. Pa.R.A.P. 313(a).

> The collateral order doctrine allows for immediate appeal of an order which: (1) is separable from and collateral to the main cause of action; (2) concerns a right too important to be denied review; and (3) presents a claim that will be irreparably lost if review is postponed until final judgment in the case.

*Vaccone v. Syken,* 587 Pa. 380, 384, 899 A.2d 1103, 1106 (2006). "A discovery order is collateral only when it is separate and distinct from the underlying cause of action." *Feldman v. Ide,* 915 A.2d 1208, 1211 (Pa.Super.2007). This Court has previously considered the merits of an appeal from a discovery order requiring the pro-

duction of documents where there is a "colorable claim of attorney-client [ ] privilege [which] made appellate review proper" at this stage of the proceedings. *Gocial v. Independence Blue Cross,* 827 A.2d 1216, 1220 (Pa.Super.2003).

¶ 5 Here, as we did in *Gocial,* we conclude that the order in question is separable from the main cause of action, that the right involved is too important to be denied review at this time, and that the claimed right will be irreparably lost if immediate review is denied. Accordingly, we find the order in question meets the requisites of the collateral order doctrine and is properly presented for review at this juncture.

■ ¶ 6 HBK first claims that the trial court erred in failing to conduct a choice of law analysis. The record reflects that counsel for HBK and CW made specific argument to the trial court on whether Pennsylvania or Ohio law governed application of the claimed attorney-client privilege. However, the trial court's June 21, 2006 order did not address the choice of law issue. In its Rule 1925(a) opinion, the trial court merely stated that it had jurisdiction over the disputed letter since it was transmitted into the Commonwealth of Pennsylvania. Trial Court Opinion, 10/4/06, at 4. It therefore applied Pennsylvania law relating to the privilege and its waiver, concluding that HBK waived the attorney-client privilege, and, thus, the letter was discoverable. *Id.* at 4–9.

---

Court under seal. C.R. at 37. The October 18, 2005 letter appears in the Certified Record designated as Part II (C.R.II) at unnumbered pp. 1–2. Nevertheless, this Court will refer to the document only to the extent necessary to address the issues presented.

4. We note that HBK and the trial court have complied with Pa.R.A.P. 1925. We also ob-

serve that HBK has filed a motion to supplement the appendix of its reply brief based on an inadvertent omission from its original reply brief. CW has filed an answer opposing the motion. Although we grant HBK's motion, we deem the material contained in its supplement to be of no consequence and have disregarded it in our analysis of the issues.

¶ 7 We must agree with HBK that the trial court erred in failing to analyze the choice of law question. Our Supreme Court has explained in the criminal context that, "[i]n Pennsylvania, we do not apply our law just because we have jurisdiction." *Commonwealth v. Eichinger,* 591 Pa. 1, 19, 915 A.2d 1122, 1133 (2007)(citing *Griffith v. United Air Lines,* 416 Pa. 1, 203 A.2d 796 (1964)). In *Griffith,* the Court reasoned that where more than one jurisdiction has an interest in the "legal issues arising out of a particular factual context," a court should "apply the policy of the jurisdiction most intimately concerned with the outcome of [the] particular litigation." 416 Pa. at 21–22, 203 A.2d at 804–05 (internal quotation marks and citations omitted). *See also* RESTATEMENT (SECOND), CONFLICT OF LAWS § 1 (1971).[5]

¶ 8 Instantly, it is clear that the parties presented a legitimate question over whether Pennsylvania or Ohio had a greater interest in the matter. As such, a choice of law analysis was necessary.

> Pursuant to the Pennsylvania choice of law analysis, the first step requires a determination of whether the laws of the competing states actually differ. If the laws do not differ, then a true conflict is not present and no further analysis is necessary. In that case, we apply Pennsylvania law. If we determine that a true conflict is present, we must then analyze the governmental interests underlying the issue and determine which state has the greater interest in the application of its law to the matter at hand.

*Thibodeau v. Comcast Corp.,* 912 A.2d 874, 886 (Pa.Super.2006)(internal citations omitted). Accordingly, we must examine the laws of Pennsylvania and Ohio related to waiver of the attorney-client privilege to determine whether there is a true conflict.

¶ 9 Courts in this Commonwealth have recognized that "the roots of the attorney-client privilege are firmly entrenched in our common law, described fittingly as '. . . the most revered of our common law privileges.'" *In re Investigating Grand Jury of Philadelphia County No. 88–00–3503,* 527 Pa. 432, 438–39, 593 A.2d 402, 405 (1991)(quoting *Commonwealth v. Maguigan,* 511 Pa. 112, 124, 511 A.2d 1327, 1333 (1986)). The privilege

> is designed to foster confidence between attorney and client, leading to a trusting, open dialogue. The privilege derives from the recognition that full and frank communication between attorney and client is necessary for sound legal advocacy and advice, which serve the broader public interests of observance of law and administration of justice.

*Nationwide Mutual Ins. Co. v. Fleming,* 2007 PA Super 145, ¶ 9, 924 A.2d 1259(internal quotation marks and citations omitted).

¶ 10 In Pennsylvania, our Judicial Code includes a provision governing the application of the attorney-client privilege.

### § 5928. Confidential communications to attorney

In a civil matter counsel shall not be competent or permitted to testify to confidential communications made by his client, nor shall the client be compelled to disclose the same, unless in either

---

5. **§ 1 Reason for the Rules of Conflict of Laws**
   The world is composed of territorial states having separate and differing systems of law. Events and transactions occur, and issues arise, that may have a significant relationship to more than one state, making necessary a special body of rules and methods for their ordering and resolution.
   RESTATEMENT (SECOND), CONFLICT OF LAWS § 1 (1971).

case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5928.

[F]our elements must be satisfied in order to successfully invoke the protections of attorney-client privilege:

1) The asserted holder of the privilege is or sought to become a client.

2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

*Nationwide, supra,* at ¶ 11 (citations omitted). "[T]he appellate courts of this jurisdiction have found waiver [of the attorney-client privilege] when the communication is made in the presence of or communicated to a third party or to the court, when the client relies on the attorney's advice as an affirmative defense, or when the confidential information is placed at issue." *Bonds v. Bonds,* 455 Pa.Super. 610, 689 A.2d 275, 277 (1997).

¶ 11 Ohio's comparable statutory provision is as follows.

§ 2317.02. Privileged communications

The following persons shall not testify in certain respects:

(A) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client.... However, if the client voluntarily testifies or is deemed by section 2151.421 of the Revised Code [relating to child abuse or neglect] to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject.

Ohio Rev.Code Ann. § 2317.02. The Ohio Supreme Court has recently reiterated that Section 2317.02 "clearly enumerates the means by which a client may waive the statutory attorney-client privilege," and the Court maintained its consistent position that it would not adopt any judicially created waivers of that privilege. *Jackson v. Greger,* 110 Ohio St.3d 488, 490–91, 854 N.E.2d 487, 490 (2006). The Court of Appeals of Ohio has also emphasized that, "[w]hile [the attorney-client] privilege can be waived, it can only be waived by the client, not the attorney." *Maust v. Palmer,* 94 Ohio App.3d 764, 641 N.E.2d 818, 820 (1994).

¶ 12 We recognize that there have been two fairly recent Ohio cases addressing waiver of the attorney-client privilege through inadvertent disclosure of documents during discovery which are not aligned with the holding in *Jackson.* In *Miles–McClellan Construction Co., Inc. v. Westerville City School Board,* 2006 WL 1817223, 2006 Ohio App. LEXIS 3366 (filed June 30, 2006), the Court of Appeals determined a hearing was required to conduct a balancing test which would

weigh (1) the reasonableness of the precautions taken by the party asserting privilege to prevent the disclosure, (2) the time taken to rectify the inadvertent error, (3) the scope and nature of the discovery proceedings, (4) the extent of the disclosure in relation to a role in discovery proceedings, and (5) the overriding issue of fairness.

*Id.* at ¶ 15. Citing *Ward v. Graydon, Head & Ritchey,* 147 Ohio App.3d 325, 770 N.E.2d 613 (2001), *appeal denied,* 94 Ohio St.3d 1507, 764 N.E.2d 1037 (2002), the Court stated that "[w]aiver of the attorney-client privilege may be either express

or implied." *Id.* at ¶ 9. The *Miles–McClellan* Court also characterized counsel for the school board as a "properly appointed agent in conduct of the litigation," *id.* at ¶ 11, and, thus, rejected the school board's contention that it could not effectuate any type of waiver through the actions of its counsel. *Id.* at ¶ 18. Similarly, a U.S. District Court in *Evenflo Co., Inc. v. Hantec Agents, Ltd.*, 2006 WL 2945440, 2006 U.S. Dist. LEXIS 74684 (filed October 13, 2006), relied on the test enunciated in *Miles–McClellan*, and applied it to the inadvertent disclosure of certain privileged communications. The *Evenflo* Court did not, however, directly address whether the privilege could be waived by counsel for the party asserting the privilege.

¶ 13 Instantly, we find persuasive HBK's contention that the validity of the balancing test utilized in *Miles–McClellan* and *Evenflo* is in doubt following the Ohio Supreme Court's pronouncements in *Jackson.* The Court of Appeals decision in *Miles–McClellan* predated *Jackson* and, significantly, the Ohio Supreme Court in *Jackson* refused to follow case law utilizing a balancing test to determine whether the attorney-client privilege was impliedly waived. *Jackson* at 491, 854 N.E.2d at 490.[6] Accordingly, we must conclude that the governing law in Ohio on attorney-client privilege is that set forth by its Supreme Court in *Jackson.* *Accord Gragg v. International Management Gp.*, 2007 WL 1074894, *5 n. 7, 2007 U.S. Dist. LEXIS 25780, *15 n. 7 (N.D.N.Y. filed April 5, 2007).

¶ 14 Based upon this review of the applicable law in Pennsylvania and Ohio, it is evident that there is a conflict between the law of the two states as pertains to the issue of waiver of the attorney-client privilege in this case. While Pennsylvania recognizes several exceptions to the statutory provision and has considered the privilege waived once the communication is divulged to a third party,[7] the Supreme Court of Ohio has made clear that it will not find waiver in such circumstances outside of the statute.[8] Accordingly, we find the first prong of the conflict of interest test is met, and we must proceed to "analyze the governmental interests underlying the issue and determine which state has the greater interest in the application of its law[.]" *Thibodeau, supra*, at 886.

¶ 15 CW filed this suit in the Court of Common Pleas of Lawrence County, Pennsylvania, alleging that the cause of action arose out of transactions or occurrences taking place in Lawrence County. HBK admitted each of those averments. The lawsuit arose from Young's employment with both CW and HBK in their respective offices located in Pennsylvania. The inadvertent disclosure was made to CW's counsel in Pittsburgh, Pennsylvania, although it was intended to be transmitted to HBK's local counsel in New Castle, Pennsylvania. While HBK is correct that the communication originated in Ohio and that the headquarters of HBK and its counsel are located in Ohio, we find the cases on which it relies to support a choice of Ohio law are inapposite.

¶ 16 HBK first finds support for its position in *McNulty v. Bally's Park Place, Inc.*, 120 F.R.D. 27 (E.D.Pa.1988). There, the plaintiff in a slip and fall case sought to compel the production of documents from the defendant, including an opinion letter

---

**6.** The case law cited in *Jackson* includes *Ward* on which the *Miles–McClellan* Court relied in part in formulating its balancing test.

**7.** *Bonds, supra*, 689 A.2d at 277.

**8.** *Jackson, supra*, 110 Ohio St.3d at 490, 854 N.E.2d at 490.

from defendant's counsel to the defendant about matters wholly unrelated to the litigation. The defendant objected and asserted the attorney-client privilege. The Court determined that under Pennsylvania's "interest analysis" approach to conflict of law issues, the law of New Jersey applied to the question of privilege because that is where the defendant was incorporated, where it had its principal place of business, and where its counsel's office was located. *Id.* at 30–31. Importantly, however, there was no connection between the communication which the plaintiff sought and the Commonwealth of Pennsylvania. *Id.* at 31.

¶ 17 In *Super Tire Engineering Co. v. Bandag, Inc.*, 562 F.Supp. 439 (E.D.Pa. 1983), the defendant was incorporated in the state of Iowa where its attorney-client relationship arose. The plaintiff, who filed a diversity action seeking damages for breach of a franchise agreement, sought production of certain documents which the defendant claimed were protected by the attorney-client privilege. Without elaboration, the Court stated that it would consider the privilege law of Iowa in making its ruling, thereby suggesting that no choice of law analysis was necessary.

■ ¶ 18 We are not persuaded that either *McNulty* or *Super Tire* requires application of Ohio law to this case. First, these cases are clearly distinguishable on their facts.[9] Secondly, in this case, and unlike *McNulty* and *Super Tire*, it is evident that there is a direct and explicit connection between Pennsylvania and the communication which HBK has claimed was privileged. Indeed, there is no ques-

tion that the subject letter relates specifically to the lawsuit between the parties in Lawrence County, Pennsylvania. Thirdly, while Ohio arguably also has some interest in the privilege asserted herein, our analysis set forth above compels us to conclude that Pennsylvania's interest is more significant than that of Ohio such that application of Pennsylvania law to the underlying issue in this matter is appropriate.[10]

■ ¶ 19 We now turn to HBK's second issue, which is whether the document was discoverable or subject to the privilege. Several important principles guide our review. "Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard." *McNeil v. Jordan,* 586 Pa. 413, 426, 894 A.2d 1260, 1268 (2006). However, the question of "[w]hether attorney-client privilege protects a particular communication from disclosure is a question of law." *Nationwide, supra,* at ¶ 8. As such, we employ a *de novo* standard of review and our scope of review is plenary. *Id.* Additionally, we note that

> the party who has asserted the attorney-client privilege must initially set forth facts showing that the privilege has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege, e.g., because the privilege has been waived or because some exception applies.

*Id.* at ¶ 19. There is no question in this case that the attorney-client privilege has been properly invoked; hence, the burden

---

9. We also observe that while federal district court decisions may be persuasive, they are not binding authority. *Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien,* 589 Pa. 296, 310, 908 A.2d 875, 884–85 n. 10 (2006). Because we find the cited cases to be distinguishable, we do not find them persuasive on this issue.

10. "This Court can affirm the trial court's decision on any valid basis." *Pennsy Supply, Inc. v. Mumma,* 2007 PA Super 77, ¶ 17 n. 9, 921 A.2d 1184.

was on CW to establish waiver of that privilege. As noted above, however, the pertinent facts which are necessary to decide the issues presented are essentially undisputed; HBK's arguments center on the trial court's application of the law to the facts.

¶ 20 In concluding that HBK did waive its attorney-client privilege with respect to the particular document at issue, the trial court recognized that there were no state appellate court decisions addressing the issue of inadvertent waiver of the attorney-client privilege. It therefore turned to and employed the test applied by the District Court in *Fidelity & Deposit Co. v. McCulloch,* 168 F.R.D. 516 (E.D.Pa.1996). There, Fidelity filed a declaratory judgment action to determine its obligations to the defendants based on an insurance policy it issued to the defendants for breach of fiduciary duty. Employees of the defendants had sought to recover benefits under the defendants' pension plan. During discovery, Fidelity inadvertently disclosed to the defendants certain privileged documents which it sought to protect. The District Court set forth five factors to be considered to determine whether an inadvertent disclosure amounts to waiver of the privilege:

(1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and

(5) whether the overriding interests of justice would or would not be served by relieving the party of its errors.

*Id.* at 522 (citations omitted). The *Fidelity* Court determined that the precautions taken by Fidelity were adequate, the number of disclosures was relatively small, and the extent was minimal. *Id.* Although the Court stated that Fidelity was not "especially vigilant in its efforts to rectify" the disclosures, the Court concluded the interests of justice were served in not finding waiver of the privilege. *Id.* Additionally, the Court observed that "while the attorney-client privilege belongs to the client, the attorney, acting as the client's agent, may be sufficiently negligent in protecting the privilege that it may be waived" by counsel.[11] *Id.* at 523.

¶ 21 In the case *sub judice,* the trial court recognized that the disclosure of a single document was minimal. Trial Court Opinion, 10/4/06, at 8. Nevertheless, the trial court reasoned that HBK could have taken reasonable precautions to avoid inadvertent disclosure of this particular document and, importantly, that HBK failed to take steps to rectify the disclosure for at least 17 days after it was notified of its occurrence. *Id.* at 8–9. On balance, the trial court concluded that the interests of justice would be served by finding that HBK waived the attorney-client privilege with respect to the letter. *Id.* at 9.

■ ¶ 22 We find the test set forth in *Fidelity* is appropriate to decide the issue presented and is not inconsistent with Pennsylvania law which does recognize

---

11. Our Commonwealth Court in *Maleski v. Corporate Life Ins. Co.,* 165 Pa.Cmwlth. 72, 646 A.2d 1 (1994), observed that "the client is the holder of the [attorney-client] privilege," but a client who "fails to claim the privilege, either himself or through another" waives the privilege. *Id.* at 4 (citing 8 Wigmore, Evidence § 232 (McNaughten rev.1961)). Some common pleas courts in Pennsylvania have found the attorney-client privilege waived by counsel. *See, e.g., Herman Goldner Co., Inc. v. Cimco Lewis Industries,* 58 Pa. D. & C. 4th 173 (2002); *Minatronics Corp. v. Buchanan Ingersoll, P.C.,* 23 Pa. D. & C. 4th 1 (1995). HBK does not contend that, under Pennsylvania law, there can be no waiver of the privilege by counsel.

waiver of the attorney-client privilege in certain circumstances where the communication is made to a third party. *Nationwide, supra*, 2007 PA Super 145 at ¶ 15, 924 A.2d 1259; *Joe v. Prison Health Services, Inc.*, 782 A.2d 24, 31 (Pa.Cmwlth. 2001). Although courts across the nation have generally followed one of three approaches to determining whether an inadvertent disclosure constitutes a waiver of the attorney-client privilege,[12] it appears that most courts use the balancing approach (like that in *Fidelity* ) rather than one of the other two extremes which automatically find that an inadvertent disclosure either does or does not waive the privilege.[13] Because Pennsylvania does recognize that disclosure of a privileged communication to a third party may constitute waiver and further has found exceptions to that general rule,[14] neither of those definitive approaches is consistent with the law in this Commonwealth.

Moreover, as one commentator has observed, it is quite logical to consider the reasonableness of the precautions taken to avoid disclosure where, as here, the disclosure is inadvertent rather than intentional.[15] Accordingly, we agree with the trial court that application of the *Fidelity* balancing test is appropriate in Pennsylvania.[16]

¶ 23 In this portion of its argument, HBK asserts that the trial court placed undue emphasis on its delay in taking steps to rectify the disclosure and suggests that the "overriding interests of justice" would be better served by a ruling in HBK's favor. Appellant's brief at 18. To address this contention we now turn to a consideration of the five *Fidelity* factors.

¶ 24 The first factor is the reasonableness of the precautions which were taken to prevent the inadvertent disclosure of the confidential communication "in view of

---

**12.** *See, e.g., Ciba–Geigy Corp. v. Sandoz Ltd.*, 916 F.Supp. 404 (D.C.N.J.1995). The Court described the three approaches as follows: (1) inadvertent disclosure constitutes waiver; (2) such disclosure is never a waiver; and (3) a "middle of the road" approach which "focuses upon the reasonableness of the steps taken to preserve the confidentiality of privileged documents." *Id.* at 410–11. We do observe that a new federal evidence rule has been proposed to address inadvertent disclosure of privileged communications related to federal proceedings. *See Report to the Standing Committee on Rules of Practice and Procedure, Judicial Conference of the United States by the Advisory Committee on the Evidence Rules*, May 15, 2007. The Report and the current Proposed Rule 502 are available at http://www.uscourts.gov/rules/Reports/EV05-2007.pdf

**13.** *See, e.g.,* Weinstein's Federal Evidence § 503.42 (2006)(collecting cases); Andrew N. Plasz, *Waiver of Privilege for Documents Inadvertently Disclosed During Discovery*, 93 ILL. B.J. 126, 128–30 (2005). We also observe that this middle approach is the one which the Court of Appeals of Ohio adopted in *Miles–McClellan, supra*.

**14.** *See, e.g., Commonwealth v. May*, 540 Pa. 237, 251, 656 A.2d 1335, 1342 (1995) (concluding that communication made in presence of a third party who lacked capacity to be a witness did not amount to waiver of attorney-client privilege); *Kalenevitch v. Finger*, 407 Pa.Super. 431, 595 A.2d 1224, 1228 (1991)(noting that while communications made to counsel in the presence of a third party are generally not privileged, an exception exists for statements made to attorney's employees or in their presence).

**15.** Brian Beckham, *Production, Preservation, and Disclosure of Metadata,* 7 COLUM. SCI. & TECH. L. REV. 1, 4 (2006).

**16.** Although we have already observed that federal district court decisions are not binding, *see supra* n. 8, this Court has consistently recognized it as persuasive authority where, as here, there are similarities between federal and state discovery rules. *See Crum v. Bridgestone/Firestone North Amer. Tire, LLC.*, 907 A.2d 578, 586 (Pa.Super.2006), and cases cited therein.

the extent of the document production." *Fidelity*, 168 F.R.D. at 522. While HBK points to its use of standard confidentiality language on its fax cover page,[17] we must agree with the trial court that HBK did not take reasonable precautions with respect to disclosure of the letter. This was not a situation where a letter was inadvertently included in a number of boxes of documents provided as part of discovery. *Compare Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 476 F.Supp.2d 913, 945 (N.D.Ill.2007)(applying five-factor balancing test and finding inclusion of single document in 35–40 boxes of discovery materials did not establish that precautions were unreasonable). Rather, the disclosure here was limited to a single document which was transmitted directly to counsel for CW via facsimile.[18] Regardless of whether that transmission was accidental, we find that HBK could have reasonably taken preventative steps to avoid its disclosure to counsel for CW. As such, this factor does not favor HBK.

¶ 25 The next factor is the number of inadvertent disclosures, which is restricted to one document. This factor similarly does not favor HBK. In *Sampson Fire Sales, Inc. v. Oaks*, 201 F.R.D. 351 (M.D.Pa.2001), *aff'd*, 55 Fed.Appx. 87 (3d Cir.2003), the district court discussed a similar situation where counsel had inadvertently faxed a single document to opposing counsel. Applying the same five-factor test as that used in *Fidelity*, the court explained that, "[b]ecause of the lim-

ited nature of the disclosure, a heavier burden rests with the plaintiff to insure that he is sending his confidential facsimile transmission to the appropriate party." *Id.* at 360–61. The court concluded that because of the small number of documents involved, this factor did not favor the party asserting the privilege. *Id.* at 361. As did the *Sampson* court, we find this factor does not weigh in HBK's favor.

¶ 26 The third factor is the extent of the disclosure which is limited to a single two-page "confidential attorney-client communication" sent to, and read by, counsel for CW even before HBK filed its answer to the complaint.[19] We find this third factor does not favor HBK. *See Draus v. Healthtrust, Inc.*, 172 F.R.D. 384, 389 (S.D.Ind.1997) (comparing circumstance where contents of disclosed document were revealed with those when contents were not made known, and concluding that disclosure of a single document was "utterly complete" when "the letter was produced to opposing counsel who read it before defendants demanded its return [and disclosure was] a bell that has already been rung."). Here, as in *Draus*, the disclosure was complete, and, thus, this factor weighs in favor of finding waiver. *Id.*

¶ 27 The fourth factor is that which the trial court found most significant, HBK's delay in taking steps to rectify the disclosure. The record reveals that counsel for CW received the facsimile transmission on October 18, 2005, which included a letter also dated October 18, 2005 authored by

---

17. These facts are set forth in an affidavit of counsel for HBK who authored the letter. *See* C.R. at 16, Exhibit B.

18. At the bottom of the fax cover page the following text, in bolded capital letters in small typeface, appeared:
   This is a confidential facsimile within the attorney-client privilege. It is intended for review and discussion only by those who

appear in the caption above **or at the end as recipients of copies.** It is not intended to be copied or distributed to others.

C.R. II at unnumbered p. 5. (emphasis added; capitalization omitted). Local counsel for HBK, who was named as addressee of the fax cover page, was one of two persons named at the end of the letter as recipients of copies.

19. C.R. at 16, Exhibit B, at ¶ 4; C.R. II.

counsel for HBK and addressed to "a principal of HBK." Amended Motion for Protective Order, ¶ 10 (C.R. at 10). On October 20, 2005, counsel for CW sent a letter to counsel for HBK via facsimile, acknowledging receipt of the October 18, 2005 correspondence and suggesting that its transmission "may have been inadvertent" in light of its substance. *Id.* at ¶ 12 and Exhibit 1. Counsel for CW requested a response from HBK. *Id.* at Exhibit 1. It was not until eighteen days later, on November 7, 2005, that counsel for HBK sent a facsimile transmission to counsel for CW agreeing that the October 18, 2005 transmission was inadvertent and seeking its immediate return. *Id.* at ¶ 13 and Exhibit 2. The parties thereafter engaged in communication regarding the inadvertent disclosure which resulted in CW's motion for protective order.

¶ 28 In its brief, HBK asserts that "counsel did not actually become aware of the disclosure until November 6, 2005, and took action the very next day." Appellant's brief at 17. HBK does not, however, contend that it did not receive CW's transmission regarding the disclosure on the date it was transmitted (October 20, 2005). It also has not provided any explanation for its failure to act between October 20 and November 7, 2005. We find, as did the trial court, that the significant delay in attempting to rectify the disclosure in these circumstances is a factor which does not favor HBK.

¶ 29 The last factor is the overriding sense of justice. HBK suggests that CW would not be prejudiced if the privilege is applied to the inadvertently disclosed document because it could pursue other avenues of discovery. It also contends that the trial court placed undue emphasis on the delay factor.

¶ 30 In *Fidelity, supra,* the Court evaluated the final factor by referring to the "reasonable precautions" prong of the five-part test and additionally considered the "substance of the disclosure" in finding the interests of justice were served by a finding of waiver of the privilege. In the case *sub judice,* the trial court explained that it was the third factor, unreasonable delay, which was an overriding consideration in its interests of justice analysis. Trial Court Opinion, 10/4/06, at 8–9. We do not find error in the trial court's return to one or more of the other four factors in conducting its analysis of the fifth prong of the balancing test. This is precisely what the Court in *Fidelity* did. 168 F.R.D. at 523. *See also, e.g., Koch Materials Co. v. Shore Slurry Seal, Inc.,* 208 F.R.D. 109, 119 (D.N.J.2002) (considering lack of precaution in disclosing and minimal efforts to retrieve disclosed documents, together with substance, in analyzing the interests of justice factor); *Hartford Fire Ins. v. Garvey,* 109 F.R.D. 323, 332 (N.D.Ca.1985) (explaining that where three of the first four factors weighed in favor of finding waiver, the interest of fairness did not compel the opposite result). Moreover, following our examination of the substance of the document, which contains merely general legal opinion regarding the enforceability of Young's employment contract with CW, we must conclude that the interests of justice would be served by finding that HBK has waived its privilege as to the October 18, 2005 letter.

¶ 31 In sum, giving due consideration to each of the five factors set forth in *Fidelity,* none which weighs in favor of HBK, as well as our review of the substance of the communication at issue, we must agree with the trial court that HBK's inadvertent disclosure of the document amounts to waiver of the attorney-client privilege. Accordingly, having found no abuse of the trial court's discretion, the order granting the motion of CW and declaring the Octo-

ber 18, 2005 letter to be discoverable must be affirmed.

¶ 32  Motion to supplement record granted.  Order affirmed.