**Protect Blacksburg v. South Carolina Dep't of Health and Environ. Control**

198

C.P. of Cumberland County, no. 10-7853 CIVIL.

*John Martin Foster,* for plaintiffs.

*Roger Page Hall* and *Stephen P. Hightower,* for SCDHEC.

*George B. Faller, Hubert X. Gilroy,* and *Katie J. Maxwell,* for defendant Sloan Construction.

HESS, *P.J.,* March 1, 2011—In this civil case, Nathan C. Wolf, Esquire, was directed to appear at a scheduled deposition for the purpose of disclosing the identity of the source of certain deposit(s) referenced in letters rogatory received by us from the Honorable Shirley C. Robinson, an Administrative Law Judge in South Carolina, and/or requesting a corporate designee of Sovereign Bank to do the same (Order of court, Jan. 13, 2011). Mr. Wolf, having indicated that he intended to assert the attorney/client privilege at any deposition and would thereby be refusing to make the requested disclosure, was adjudged in contempt (Order of court, Jan. 13, 2011). Thereafter, Mr. Wolf filed a notice of appeal to the Pennsylvania Superior Court on January 18, 2011 (Notice of appeal, filed Jan. 18, 2011). The basis for the appeal may be summarized as follows:

> Whether the January 13, 2011 order of court, directing Mr. Wolf to appear for a scheduled deposition for the purpose of disclosing the identity of the source of the deposit(s) and/or requesting a corporate designee of Sovereign Bank to do the same, and thereafter adjudging him in contempt, was in error as a result of the attorney/client privilege claimed by Mr. Wolf?

This opinion in support of the January 13, 2011, order of court is written pursuant to Pennsylvania Rule of

Appellate Procedure 1925(a).

The facts of this case may be summarized as follows. A lawsuit was initiated in South Carolina wherein plaintiffs sought to reverse a decision from the South Carolina Department of Health and Environmental Control approving permits for a quarry to be operated and developed by defendant Sloan Construction Company, Inc. (hereinafter "Sloan"). Plaintiffs are members of a citizen's group called "Protect Blacksburg" who reside adjacent to the quarry site. Plaintiffs have opposed the issuance of the permits claiming that, as a result of the permits, they will be exposed to potential injury in the form of lost property values and the quiet enjoyment of their property.

In the South Carolina litigation, Sloan sought to discover the source of plaintiffs' finances for the litigation, believing that plaintiffs may actually be receiving funding from a Sloan competitor. The Administrative Law Judge in South Carolina determined that the information sought by Sloan was both relevant and discoverable; as a result, that court issued orders which were used to obtain financial records from plaintiffs. Plaintiffs' financial records indicated that the group was, in large part, being funded by checks written from the IOLTA account of Wolf & Wolf, a Carlisle, Pennsylvania law firm, and signed by Nathan C. Wolf, Esquire. The total amount received by Protect Blacksburg from Attorney Wolf's Sovereign Bank IOLTA account was $26,160.15. Because Sloan was still unable to determine the source of the funding, Sloan filed a motion to take document depositions outside the state of South Carolina which requested that the administrative law court issue letters rogatory to the Commonwealth

of Pennsylvania. The motion requested that the letters rogatory seek the issuance of a subpoena requiring the deposition of attorney Wolf and/or a corporate representative of the bank for the purpose of producing documents which would identify the source of the funds sent to plaintiffs.

The South Carolina court granted the motion and issued letters rogatory on December 20, 2010, which were thereafter filed with the Cumberland County prothonotary on December 22, 2010. Upon receiving the letters rogatory, local counsel for Sloan notified both attorney Wolf and the undersigned, and a conference was held in chambers. At that time, attorney Wolf indicated that he would invoke the attorney-client privilege concerning the request for his client's name, and he claimed that he could not produce the documents requested in the subpoena as a result.

Following the conference, briefs were requested from the parties and argument was conducted on the record. Subsequently, we issued the following order:

> And now, this 13th day of January, 2011, pursuant to letters rogatory issued by Administrative Law Judge Shirley C. Robinson in and for Columbia, South Carolina, and following argument on the matter of privilege, Nathan C. Wolf, Esquire, is directed to appear at a scheduled deposition for the purpose of disclosing the identity of the source of the deposit(s) referenced in said letters and/or request a corporate designee of Sovereign Bank to do the same. Mr. Wolf, having indicated that he intends to assert the attorney/ client privilege at any deposition and will decline to make the requested disclosure, he is adjudged in

contempt. Sanctions in the matter are stayed pending the perfection of an appeal in this case (order of court, Jan. 13, 2011).

Initially, we note that because the South Carolina court has already determined that the information being sought by defendants is both relevant and discoverable, the full faith and credit clause of the United States Constitution precludes this court from engaging anew in an examination of its relevancy and discoverability. U.S. Const. Art. IV, § 1. "[F]ull faith and credit typically requires that a state give a judgment the same res judicata effect the judgment would have been afforded in the state which it was rendered." *Wilkes ex rel. Mason v. Phoenix Home Life Mutual Ins. Co.*, 587 Pa. 590, 902 A.2d 366, 375-76 (2006), cert denied, *Wilkes v. Phoenix Home Life Mut. Ins. Co.*, 549 U.S. 1054, 127 S.Ct. 688 (2006).

The attorney-client privilege has long been rooted in the administration of justice; it being inherently essential to the sound administration of justice that client and advocate be allowed to fully and freely communicate, the privilege is founded in the need for the advocate to possess all reasons the client may have for seeking representation. *Beltzhoover v. Blackstock*, 3 Watts 20, 1834 WL 3292 (Pa. 1834); *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The Pennsylvania Supreme Court has held the intended beneficiary of the privilege not to be the individual client, but rather the "sound administration of justice which depends on frank and open client-attorney communication." *In Re Investigating Grand Jury of Philadelphia Co.*, 527 Pa. 432, 440, 593 A.2d 402, 406 (1991). As a result, the attorney-client privilege "exists only to aid in the administration of justice, and when it

is shown that the interest of justice can only be frustrated by the exercise of the privilege, the court may require the communication to be disclosed." *Brennan v. Brennan*, 422 A.2d 510 (Pa. Super. 1980).

In Pennsylvania, the attorney-client privilege is codified in statutory law at 42 Pa. C.S.A. § 5928. The statute provides that, "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa. C.S.A. § 5928. While the privilege is statutorily mandated, it has certain requirements which must be satisfied in order to trigger its protections. "First and foremost is the rule that the privilege applies only to confidential communications made by the client to the attorney in connection with providing legal services." *Gocial v. Independence Blue Cross,* 827 A.2d 1216, 1222 (citing *Slater v. Rimar, Inc.,* 462 Pa. 138, 148, 338 A.2d 584, 589 (Pa. Super. 1975); *Commonwealth v. duPont,* 730 A.2d 970, 977 (Pa. Super. 1999), appeal denied, 561 Pa. 669, 749 A.2d 466 (2000)).[1] It is clear,

---

1. [F]our elements must be satisfied in order to successfully invoke the protections of attorney-client privilege:
   1) The asserted holder of the privilege is or sought to become a client.
   2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.
   3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.
   4) The privilege has been claimed and is not waived by the client.

*Carbis Walker, LLP v. Hill, Barth and King, LLC*, 2007 Pa. Super. 221, ¶ 10, 930 A.2d 573, 579 (citing *Nationwide Mutual Ins. Co. v. Fleming,* 2007 Pa. Super 145, ¶9, 924 A.2d 1259(internal quotation marks and

therefore, that for the privilege to become applicable there must be a confidential communication, between attorney and client, made in connection with the providing of legal services. *duPont*, 730 A.2d at 977.

The question of whether the attorney-client privilege protects a particular communication from disclosure is a question of law to be decided by the court. *Nationwide Mutual Ins. Co. v. Fleming*, 924 A.2d 1259, 1265 (Pa. Super. 2007) (citing *In re Estate of Wood*, 818 A.2d 568, 571 (Pa. Super. 2003)). Much has been written regarding the distinction between a communication from a client to an attorney and a communication from an attorney to a client. It is well-settled that communications which flow from a client to an attorney are protected. See *Nationwide Mutual Ins. Co.*, 924 A.2d 1259, 1264. Indeed, the title of § 5928 reads "Confidential communications *to* attorney." 42 Pa. C.S.A. §5928 (emphasis added). It has also been held, however, that communications which flow from an attorney to a client will also be protected "to the extent the communications are based upon confidential facts that the client disclosed initially to the attorney." *Slusaw v. Hoffman*, 861 A.2d 269, 273 (Pa. Super. 2004). In either event, however, there is no dispute regarding the nature of those communications; they must be "confidential" and "made in connection with the providing of legal services or advice." *Nationwide Mutual Ins. Co.*, 924 A.2d 1259, 1264.

After review, no Pennsylvania case appears to specifically address the issue sub judice. It is clear, however, that a communication made from a client to an

citations omitted)).

attorney must be confidential. Standing on its own, it is also clear that a "confidential communication," by definition, is one which must be made in confidence between the client to the attorney, and the confidence is the reasonable belief that the attorney will not thereafter disclose the information to a third party, or otherwise transmit that information other than in furtherance of that client's interest. The definition of "confidential communication" is, therefore, extremely broad. It does not follow, however, that the definition is all-inclusive.

Because Pennsylvania courts do not typically favor evidentiary privileges, as they are in derogation of the search for the truth, our courts have held that, in general, in order to justify such a privilege, the confidentiality of the communication is one which should also be "essential to the full and satisfactory maintenance of the relationship which seeks to assert that privilege. See *Matter of Adoption of Embick*, 506 A.2d 445, 461 (Pa. Super. 1986) (upholding a lower court's decision to permit a psychologist to testify despite the psychologist-client privilege statute).[2] With regards to a client's identity, it cannot be said that confidentiality of a client's name, and only his name, is "essential to the full and satisfactory maintenance of" the attorney-client relationship. The name or identity of a client is not a communication to an attorney which a person could reasonably expect to be protected from disclosure. Indeed, a client comes to an attorney in order for that attorney to act as an advocate on his behalf, and, furthermore, as one who is to speak for the client. Black's Law Dictionary defines "advocate" as "[a] person who

---

2. It should be noted that the range of applicability of Pennsylv - nia's psychologist-client privilege has been defined as being the same as the attorney-client privilege. 42 Pa.C.S. § 5944.

assists, defends, pleads, or prosecutes for another" and also as "[a] person who is trained in both canon and secular law and can (1) appear in an ecclesiastical or admiralty court *on another's behalf....*" Black's Law Dictionary (9th ed. 2009) (emphasis added). It flows from the definition that one who is to act on another's behalf must, when called on to do so, identify himself and acknowledge the person for whom he speaks. It cannot realistically be believed that an attorney, who is to speak for someone else, is able to refuse to disclose the name of his client because the attorney considers the client's identity to be a "confidential communication" within the meaning of the attorney-client privilege. In other words, the name of a client, while, in a sense, a communication, is not one which would fall within the general realm of a confidential communication protected by the attorney-client relationship.

It can even be argued that the "sound administration of justice" is frustrated by an attorney's refusal to identify his client. The attorney-client privilege ought not to act as a shield to prevent disclosure of the identity of a client when an attorney is called upon by the court to do so.

A client's identity is also not protected by the attorney-client privilege for the additional reason that the identity alone is not a confidential communication *"made in connection with the providing of legal services or advice."* Nationwide Mutual Ins. Co., 924 A.2d 1259, 1264 (emphasis added). Just as not every communication between a client and an attorney is confidential, neither is every communication between a client and an attorney made in connection with the provision of legal services or advice. The privilege only applies if a communication is made for the purpose of securing either legal services

or an opinion of law. That is to say, the privilege "only applies where the client's ultimate goal is legal advice." *National Railroad Passenger Corp. v. Fowler,* 788 A.2d 1053 (Pa. Commw. 2001). In the context of the case sub judice, attorney Wolf accepted money into his IOLTA account, not for the purpose of giving legal advice to his unidentified client, but rather, simply to shield the identity of a "client" in order that the client remain unknown in the South Carolina litigation.

In *Slusaw v. Hoffman,* supra, the Superior Court held that the trial court had not abused its discretion by denying a motion to quash subpoenas which sought to elicit testimony regarding the attorneys' work as guardian ad litem. *Slusaw,* 861 A.2d 269, 273. That court held that the attorney-client privilege could not be claimed to prohibit the production of invoices received by a client from his attorneys. *Slusaw,* 861 A.2d 269, 273. The court found that "[t]he subpoenaed invoices are not privileged documents to the extent that they do not disclose confidential communications which Slusaw disclosed to Attorneys Wallitsch and Reich." *Id.* at ¶ 13.

In *Marian Bank v. Lawrence Voluck Associates, Inc.,* Marian Bank obtained a judgment against the defendant and thereafter filed writs of execution and interrogatories in attachment against defendant's attorney. *Marian Bank v. Lawrence Voluck Associates, Inc.,* 26 Pa.D. & C.3d 48 (1982). The defendant's attorney claimed that he could not answer the interrogatories because of the attorney-client privilege. The court held that it was "well-established" that an attorney may be "examined as to the existence of the relationship of the attorney and client." *Marian Bank,* 26 Pa. D. & C. 3d at 52 (citing *Sargent v. Johns,* 206 Pa.

386 (1903), 8 Wigmore §2313). The court also found the following:

> It is of the very essence of the attorney-client privilege that it be limited to those communications which the client either expressly made confidential or which the client could reasonably assume under the circumstances would be understood by the attorney to be confidential: McCormick §91; 8 Wigmore § 2311 ("the privilege assumes, of course, that the communications are made with the intention of confidentiality.") The mere relationship does not raise a presumption of confidentiality, and in order to be privileged, the circumstances must indicate that the communication was of a sort intended to be confidential.

> *Id.* It is clear, therefore, that the mere acknowledgement and identification of the existence of an attorney-client relationship is not one which lends itself to the protection of the privilege.

> The Third Circuit has also held as much. In *Maulch v. Commissioner of Internal Revenue*, infra, the Third Circuit court of appeals held that the court has the right to know that the "client whose secret is treasured is actual flesh and blood, and demand his identification, for the purpose, at least, of testing the statement which has been made by the attorney who places before him the shield of this privilege." *Maulch v. Commissioner of Internal Revenue*, 113 F.2d 555, 557 (3d Cir. 1940) (quoting *Tomlinson v. United States*, 68 app. D.C. 106, 93 F.2d 652, 655). While this case is not binding on this court with regard to the attorney-client privilege, we conclude that requesting the identity of a client is an entirely reasonable right of a court.

Accordingly, we continue to be satisfied that our order of court, dated January 13, 2011, directing attorney Wolf to appear at a scheduled deposition for the purpose of disclosing the identity of the source of certain deposit(s) referenced in letters rogatory received by us from the Honorable Shirley C. Robinson, an Administrative Law Judge in South Carolina, and/or requesting a corporate designee of Sovereign Bank to do the same, was properly entered.